575 P.2d 99

**Marjorie J. COPELAND, Petitioner-Appellant,**

v.

**Lee Roy COPELAND, Jr., Respondent-Appellee.**

**No. 11427.**

Supreme Court of New Mexico.

Feb. 21, 1978.

**410**

James E. Thomson, Santa Fe, for appellant.

Branch & Coleman, Arthur H. Coleman, Rhonda P. Backinoff, Albuquerque, for appellee.

## OPINION

McMANUS, Chief Justice.

This suit was filed in the District Court of Santa Fe County for dissolution of marriage. The case was tried before the court without a jury, and judgment was entered granting dissolution of the marriage. The assets and debts of the parties were divided and no alimony granted to petitioner-appellant (wife). The wife appeals.

The primary question in this appeal concerns the disposition of retirement or pension benefits in a divorce proceeding. This subject has only been addressed once in this state. In *LeClert v. LeClert*, 80 N.M. 235,

453 P.2d 755 (1969) this Court held that retirement plans are a form of employee compensation and if acquired during coverture are community property subject to division. In *LeClert, supra,* the question of "vesting" or "maturing" of benefits was not directly in issue since the husband had already been ordered to retire although he had not actually retired at the date of the proceedings. In the instant case, the appellee needed to complete only nine additional months of state employment to be eligible for a twenty-five year retirement benefit under the State PERA plan although he would not reach sixty (retirement age) for another seven years. The issues to be resolved are (1) when are retirement benefits sufficiently vested to be subject to division in a divorce proceeding and (2) how should such benefits be apportioned to reach a just and equitable result.

The leading case in this area of division of pension benefits has been *French v. French,* 17 Cal.2d 775, 112 P.2d 235 (1941) (discussed in *LeClert, supra*) which held that a nonvested pension right is not property, but a mere expectancy and not a community asset subject to division upon divorce. This case has been followed, and then limited and distinguished for thirty-five years in California and other community property states. In 1976, however, the California Supreme Court reconsidered the holding of *French v. French, supra,* and expressly overruled that case and the line of cases which followed. In *In re Marriage of Brown,* 15 Cal.3d 838, 126 Cal.Rptr. 633, 544 P.2d 561 (1976) the court held that nonvested pension rights are not an expectancy but are a contingent interest in property subject to division. This result was compelled by the inequitable division of property when a marriage of substantial length breaks up and the major asset is a pension plan which has been acquired during the marriage but has not yet matured, i. e., is not subject to immediate disbursement. In *In re Marriage of Brown, supra,* the husband had worked twenty-three years and could opt to retire after twenty-five years or wait until he was sixty-three. The court stated:

The present case illustrates the point. Robert's pension rights, a valuable asset built up by 24 years of community effort, under the *French* rule would escape division by the court as a community asset solely because dissolution occurred two years before the vesting date. If, as is entirely likely, Robert continues to work for General Telephone Company for the additional two years needed to acquire a vested right, he will then enjoy as his separate property an annuity created predominantly through community's effort. This "potentially whimsical result," * * cannot be reconciled with the fundamental principle that property attributable to community earnings must be divided equally when the community is dissolved.

15 Cal.3d at 847–848, 126 Cal.Rptr. at 638–639, 544 P.2d at 566–567.

A similar result was reached the year before by Washington's highest court in *Wilder v. Wilder,* 85 Wash.2d 364, 534 P.2d 1355 (1975). That case held that a nonvested, unmatured pension right was a contingent right subject to division upon dissolution of the community which the trial court must consider. Texas has also followed this line of reasoning and adopted this approach in *Cearley v. Cearley,* 544 S.W.2d 661 (Tex. 1976). *See also, DeRevere v. DeRevere,* 5 Wash.App. 741, 491 P.2d 249 (1971).

In the past a plan was "vested" only when all of the requirements of the retirement plan had been met and the employee was eligible to receive the benefits. These recent cases have made the distinction between the terms "vesting" and "maturing." The term "vesting" means acquiring a right to benefits or to a benefit plan as a part of the compensation of an employee which is not subject to unilateral forfeiture or recision by the employer without terminating the employment relationship. If the employer can revoke all benefits without the consent of the employee and without having to account for contributions made to the plan (while the employee retains his job), then the employee's interest cannot be said to constitute a property right

because the benefits rest upon the whim of the employer. A plan is "vested" when it is not subject to a condition of forfeiture when the employee terminates employment before retirement. *In re Marriage of Brown, supra.* This includes both contributory and non-contributory plans. A retirement right that has "vested" is a property right. As such it is entitled to constitutional protection as for example against taking without due process of law in violation of both the federal and New Mexico constitutions. When the requirements of vesting have once been met, no longer may the employer unilaterally terminate, diminish or alter the vested rights.

■ On the other hand, a pension plan "matures" when the employee is entitled to receive the benefits which he has earned through the years and is eligible to retire. This was the situation in *LeClert v. LeClert, supra.*

■ In the present case, we need not reach the question of the disposition of a "nonvested" pension plan. The husband's right to PERA benefits was clearly vested at the date of the proceedings. The husband had twenty-four years and three months service as a state employee. He could have terminated his employment at that time with the state and still have been entitled to collect some pension benefits when he met the eligibility requirement of reaching age sixty.[1] Alternatively, he could have retired after twenty-five years and collected retirement benefits. Of course, had he continued to work until age sixty and then retired, his benefits would have increased. Therefore, his benefits were "vested" but "unmatured." Here the trial court considered the amount the community contributed to be only the "vested"

portion subject to division. Because the benefits were subject to divestment (except for the contributed portion) by death, the trial court assumed that such future benefits could not be considered in the total assets of the community.

This trend toward considering unmatured pension benefits as community property subject to division upon dissolution of the community is based upon sound reasoning and equitable considerations. Permitting the husband to keep his full benefits simply because he still had nine months to work before he was eligible to retire would work a great injustice. There was testimony that based on the husband's current income, if he retired at sixty he could expect to receive around $200,000 from retirement benefits. The $15,000 community contribution from the husband's salary in no way takes into account the value of the pension plan. The value of the retirement benefit plan is property subject to division. The question now becomes how to value the unmatured pension plan for division.

The parties both cite *Everson v. Everson,* 24 Ariz.App. 239, 537 P.2d 624 (1975) and *In re Marriage of Pope,* 544 P.2d 639 (Colo. App.1975) for the proposition that it is the amount of community contributions which is to be divided. In both cases the court determined that only that portion of the plan was "vested" and therefore subject to division. In *Everson v. Everson, supra,* the $16,000 was the husband's "vested" interest which he would have received if he retired at age sixty-five, quit, died or was disabled. Here, the husband will be entitled to more than $15,000 (although not in a lump sum) upon retirement. In *In re Marriage of Pope, supra,* the only sum deemed "vested" (there, meaning not subject to divestment by death, termination or disability) was the

---

1. The trial court in the findings of fact concluded:

> 18. Under the rules and regulations of the P.E.R.A., were Respondent to resign at present from State employment, he would be entitled to now withdraw from P.E.R.A. only the $15,704.29 which he has paid in, without interest or any other sum.

This finding is incorrect both legally and factually. Section 5-5-14, N.M.S.A.1953 (Repl.

1974) was effective 1971 and provides for a deferred retirement annuity when an employee has five years or more of contributing services. As long as the husband did not withdraw his contributions, he would still be entitled to retirement benefits if he quit under this section. This option should also be considered upon remand in determining the value of the benefits.

contributed portion. Apparently the Colorado court did not consider the "nonvested" or the "unmatured" portion of the pension plan community property subject to division.

As was pointed out in *Phillipson v. Board of Admin., Pub. Emp. Retire. Sys.*, 3 Cal.3d 32, 48, 89 Cal.Rptr. 61, 72, 473 P.2d 765, 776 (1970):

> The actuarial value of a life pension usually far exceeds the amount of the employee's accumulated contributions plus interest. The withdrawal of these contributions for an employee with lengthy service results in the destruction of the additional value without benefit to the withdrawer.

In that case the husband had absconded with all the community property and so the court awarded the entire pension to the wife. The court also stated that it could control the form of the benefits selected and that the wife did not have to withdraw the accumulated funds. The cases are in agreement that at the time of the divorce the court must place a value on the pension rights and include it in the entire assets, then make a distribution of the assets equitably. *See, Hutchins v. Hutchins*, 71 Mich. App. 361, 248 N.W.2d 272 (1976). But how shall this be done? In considering a nonvested pension plan, the court in *Wilder v. Wilder, supra,* said:

> We think the proper rule is that the court must consider all the circumstances and evaluate the probability that the party who has a contingent right to a pension will eventually enjoy that pension. The length of time remaining before eligibility matures is a factor for the court to consider; also, the other options open to the person and the likelihood that he may * * * decide to pursue some other career and abandon his pension rights. Also, the court must take account of the community's investment in the pension system and determine whether, in the event the party entitled to the pension decides to abandon his rights, the community's contribution should nevertheless be considered an asset under his control and

be balanced against other assets awarded to the other party. There can be no set rule for determining every case and as in all other cases of property distribution, the trial court must exercise a wise and sound discretion.

85 Wash.2d at 369, 534 P.2d at 1358.

The court went on to affirm the trial court's judgment whereby the husband was ordered to pay the wife a certain sum each month either out of the pension to which he would be entitled in one year or out of his salary if he elected not to retire. In *Ramsey v. Ramsey*, 96 Idaho 672, 535 P.2d 53 (1975) the husband had retired from the military and was receiving his pension. The trial court awarded a percentage of his monthly benefits but the supreme court held that the wife's interest should be reduced to immediate possession. The court said that a determination should be made upon remand of the present value of the husband's retirement pay based upon his life expectancy and discounted for present value. This is generally done on the basis of actuarial tables. In *In re Marriage of Brown, supra*, the appellate court also advised the trial court to take account of the possibility of death or termination of employment and to evaluate those risks when determining the present value of nonvested, unmatured pension rights. In this present case the wife contends that the present value of the husband's retirement benefits was $70,000.

Some courts have felt that it is better to leave the risk apportioned between the two parties and to award either a specified amount or a certain percentage of the benefit to the nonretiring spouse if, when and as the benefits are paid. The administration of this type of award would be more complex but the court in *In re Marriage of Brown, supra*, held that an administrative burden was not sufficient justification for refusing to divide the benefits in this manner, because it takes into account all of the contingencies. The administration of an ongoing payment type of award should not be an onerous burden though, because alimony and child support payments have

**414**

been adequately handled in this manner. Such an "if, when and as received" payment award has been approved in the cases in various jurisdictions. *See, In re Marriage of Brown, supra; Cearley v. Cearley, supra; Miser v. Miser*, 475 S.W.2d 597 (Tex. Civ.App.1971); *DeRevere v. DeRevere, supra ; Pinkowski v. Pinowski*, 67 Wis.2d 176, 226 N.W.2d 518 (1975).

■ It would appear that a flexible approach to this problem is needed. The trial court should make a determination of the present value of the unmatured pension benefits with a division of assets which includes this amount, or divide the pension on a "pay as it comes in" system. This way, if the community has sufficient assets to cover the value of the pension, an immediate division would make a final disposition; but, if the pension is the only valuable asset of the community and the employee spouse could not afford to deliver either goods or property worth the other spouse's interest, then the trial court may award the non-employee spouse his/her portion as the benefits are paid. The wife made a similar request during these divorce proceedings.

The wife also appeals from a denial of alimony. Since the trial court must reconsider the division of the property pursuant to this opinion, the question of alimony is not in order until the extent of property awarded to each party is determined. *Hughes v. Hughes*, 91 N.M. 339, 573 P.2d 1194 (1978).

This case is remanded to the District Court of Santa Fe County so that it may proceed to equitably divide the community property in light of this decision.

Appellant is awarded attorney's fees in the amount of $750.00.

EASLEY and FEDERICI, JJ., concur.