599 P.2d 1004

Jeanette T. SHILL, Plaintiff-Appellant,

v.

Douglas K. SHILL,
Defendant-Respondent.

No. 12948.

Supreme Court of Idaho.

Sept. 11, 1979.

William A. Parsons of Parsons, Smith & Stone, Burley, for defendant-respondent.

BAKES, Justice.

Appellant Jeanette T. Shill and respondent Douglas K. Shill were married September 29, 1957. In April, 1958, Douglas Shill was hired by the City of Burley, Idaho, fire department and commenced making contributions from his wages to the State of Idaho Firemen's Retirement Fund, established pursuant to Title 72, chapter 14, of the Idaho Code. On October 24, 1977, appellant and respondent were divorced. At the time of the divorce Douglas Shill had completed nineteen and one half years of employment with the City of Burley fire department and had been promoted to the position of fire chief.

The decree of divorce was entered on October 24, 1977. The final resolution of child custody, child support and property division questions was reserved for later decision. On January 25, 1978, the trial court judge entered a memorandum decision which stated in part:

> "Defendant's position as Fire Chief of the City of Burley is an appointive position subject to the will of the Mayor and council of that city. His right to retirement is contingent on his continued appointment and has no legislative or other guarantee of maturity. As of the date of trial the only vested right possessed by defendant was to the $8,089.24 cash surrender value of his pension contributions. This was all contributed during the marriage and was community property. It should be divided evenly."

On March 1, 1978, the trial court made findings of fact and conclusions of law which stated:

> "5. The vested interest of the defendant in the Firemen's Pension Plan as of October 24, 1977, was Eight Thousand Eighty-Nine Dollars and Twenty-Four Cents ($8,089.24). The position of Fire Chief of the City of Burley, is subject to the will of the Mayor and Council of the City, and

Stephen A. Bywater, Burley, for plaintiff-appellant.

the defendant has no guarantee of continued employment."

Judgment was entered on March 1, 1978, in accordance with the findings of fact and conclusions of law. In the property division appellant Jeanette Shill was awarded one-half of the $8,089.24 cash surrender value of the Firemen's Retirement Fund.

The principal question raised in this appeal is whether the trial court erred in finding that the value of the couple's community property interest in the Firemen's Retirement Fund as of October 24, 1977, the date of divorce, was its cash contribution of $8,089.24. This appeal raises for the first time in Idaho the issue of whether in a divorce proceeding a marital community has a dividable property right or interest in payments which may subsequently be received from a non-vested pension plan.

At the date of the divorce, Douglas Shill had worked for the City of Burley fire department for 19½ years. If his employment as a paid firefighter were to be terminated, either voluntarily or involuntarily, prior to the twentieth year, he would have been entitled to receive only the contributions to the fund made from his salary or wages at the time of termination, and he would not have been eligible for further benefits from the plan.[1] The trial court reasoned that the contingencies to Douglas Shill's right to draw a pension compelled a valuation of the pension at its cash surrender value as of the date of divorce. The essence of the court's ruling was that the couple's contingent interest in benefits from the fund had no present value.

Courts in most of the community property states have been faced with the question of how to value and divide non-vested pen-sion rights upon dissolution of a marriage. The traditional rule was that non-vested pension rights were not property, but were a mere expectancy and thus not a community asset subject to division upon dissolution of a marriage. The leading case stating this principle was *French v. French*, 17 Cal.2d 775, 112 P.2d 235 (1941). The rule in *French* has been perceived by commentators as being inequitable because, under it, a division of pension rights was dependent solely upon whether those pension rights were vested before or after the date of divorce, a date often within control of the employee spouse.[2]

In 1969 the New Mexico Supreme Court became the first court in the community property jurisdictions to disapprove the rule embodied in *French*. It held, in *LeClert v. LeClert*, 80 N.M. 235, 453 P.2d 755 (1969), that a husband's Navy retirement pay to which the husband would become entitled on retirement after the divorce was a community property interest subject to division in the divorce proceeding. The New Mexico Supreme Court affirmed the trial court order dividing equally between the ex-spouses the 73% of the future retirement pay which had been earned during coverture, the wife's share to be paid when received by the husband.

Since 1975 the courts in Arizona, California, New Mexico, Texas and Washington have each abandoned the rule exemplified by *French* and have held that a marital community has a property right or interest subject to division at divorce in retirement benefits prior to the time the employed spouse's right to receive the pension becomes vested.[3] *Van Loan v. Van Loan*, 116

---

1. I.C. § 72–1429Q. The legislature in 1978, subsequent to the Shills' divorce, enacted I.C. § 72–1429S which provides that a firefighter with at least five years of continuous paid service who voluntarily terminates employment as a firefighter may choose to leave his or her contributions in the pension fund and draw monthly retirement benefits at age 60 equal to 2% of his or her average monthly salary, as modified by a cost of living adjustment, for each year of service as a firefighter.

2. *See, e. g.,* Note, "Retirement Pay: A Divorce in Time Saved Mine," 24 Hast.L.Rev. 347 (1973).

3. This judicial trend undoubtedly reflects the immense investment currently existing in pension plans and the large number of divorces which take place each year. In 1977 there was an aggregate of $400 billion in funds invested in insured private pension plans, IRA's, and non-federal government plans (Pattie, "In a Divorce or Dissolution Who Gets the Pension Rights:

Ariz. 272, 569 P.2d 214 (1977); *Brown v. Brown*, 15 Cal.3d 838, 126 Cal.Rptr. 633, 544 P.2d 561 (1976) (expressly overruling *French v. French*, 17 Cal.2d 775, 112 P.2d 235 (1941)); *Copeland v. Copeland*, 91 N.M. 409, 575 P.2d 99 (1978) (affirming the rule adopted in *LeClert v. LeClert*, 80 N.M. 235, 453 P.2d 755 (1969); *Cearley v. Cearley*, 544 S.W.2d 661 (Tex.1976); and *Wilder v. Wilder*, 85 Wash.2d 364, 534 P.2d 1355 (1975). The reasoning in each of these cases is similar. The New Mexico Supreme Court noted that abandonment of the rule in *French*

> "was compelled by the inequitable division of property when a marriage of substantial length breaks up and the major asset is a pension plan which has been acquired during the marriage but has not yet matured, i. e., is not subject to immediate disbursement." *Copeland v. Copeland*, 91 N.M. 409, 575 P.2d 99, 101 (1978).

At the time of his divorce Douglas Shill was 43 years old and had no intention of quitting his employment with the City of Burley fire department. His position there as fire chief was found by the trial court to be a non-contractual appointive position subject to the will of the mayor and city council of Burley, although Mr. Shill testified that he could not be involuntarily terminated by the city without a legitimate reason.[4]

The State of Idaho Firemen's Retirement Fund establishes a pension plan funded by contributions from each paid fireman deducted from the fireman's wages or salary. Other revenues are also added to the fund.[5] Douglas Shill's contributions to the fund were made from his wages, and any property interest attributable to those contributions is a community asset. *Kohny v. Dunbar*, 21 Idaho 258, 121 P. 544 (1912); I.C. §§ 32–903 and –906. A firefighter's interest in the pension fund attributable to fund income from sources other than employee

contributions is not a gratuity but a form of deferred compensation accrued by reason of the individual's service and is also a community property asset to the extent acquired during coverture. *See Guy v. Guy*, 98 Idaho 205, 560 P.2d 876 (1977) (employee disability benefits paid by employer are compensation for past employment and are community property if earned during marriage); *Travelers Ins. Co. v. Johnson*, 97 Idaho 336, 544 P.2d 294 (1975) (a group life insurance policy provided by an employer as an incident of employment is a community property asset if acquired during marriage); *Ramsey v. Ramsey*, 96 Idaho 672, 535 P.2d 53 (1975) (retirement pay based upon military service is not a gratuity but is an earned property right accrued by reason of the person's military service and is community property to the extent earned during marriage); *see also LeClert v. LeClert*, 80 N.M. 235, 453 P.2d 755 (1969).

The trial court's ruling that the sole community property interest possessed by the couple at the time of divorce and subject to division in the marital dissolution proceedings was the cash surrender value of the Shill's pension contributions does not recognize the potential value which those pension rights will have upon vesting. Although Douglas Shill could not draw a pension from the fund until he had completed twenty years of service as a fireman, the pension is not earned on the last day of the twentieth year of employment. The value of the pension at the end of twenty years of service is a form of deferred compensation which is attributable to the entire period in which it was accumulated. The portion of the pension rights earned during the marriage were contingent earnings which may or may not have matured into a vested right to draw pension benefits, but constitutes a contingent community property interest subject to consideration and division upon divorce.

---

Domestic Relations Law and Retirement Plans," 5 Pepperdine L.Rev. 191, 202, n.39). In 1976 (latest year available) there were in the United States 1,077,000 divorces (1978 Information Please Almanac, Viking Press, 1977).

4. Briefs and oral arguments in this case indicate that Douglas Shill completed twenty years of service as a paid firefighter on April 15, 1978.

5. *See* I.C. §§ 72–1403 and –1411.

The more difficult problem in this case is not deciding whether the Shill marital community has a property interest in the pension subject to division upon divorce, but in valuing and dividing that contingent interest.[6] A retired firefighter's right to a pension from the fund is not represented by an individual account statement which might provide ready reference to the employee's accumulated interest in the plan. All that is known when a divorce occurs prior to the time that an employed spouse's interest in a pension fund vests is that if the employee stays alive and on the job until retirement at a time when the pension right has vested, he or she will be entitled to a contractual or statutorily determined monthly payment until the employee's death. Factors which will affect the value of the couple's contingent community property interest in the pension fund include the possibility that the employee-spouse will die or change jobs before satisfying the time requirements for vesting; the fact that the divorced employee might defer retirement beyond the date that an optional early retirement with monthly pension is available; and the fact that subsequent to the divorce maintenance of the employee's interest in the pension fund will likely be made from the employee's separate property, or, if he or she remarries, from the property of a subsequent community.

There are essentially only two ways to divide the retirement benefits upon divorce. One is to award the employee-spouse the pension and assign the non-employee-spouse assets of a value equal to the present value of the contingent benefits. In some divorce cases this might be accomplished by awarding the non-employee-spouse the family home, while awarding the employee-spouse the future rights to the entire pension. The other method of dividing the rights is to reserve jurisdiction until retirement and divide the actual monetary benefit when re-

ceived. The advantage of the lump sum approach is that it effects a complete severance of the spouses' interests and gives each spouse immediate control of his or her share of the community property. *Ramsey v. Ramsey,* 96 Idaho 672, 535 P.2d 53 (1975). However, it will often be true, as in the case at bar, that the pension rights represent the largest portion of the assets owned by the community. An immediate award of equivalent property to the non-employee-spouse in exchange for the future contingent right to pension benefits will work a severe economic hardship on the employee-spouse. *See Ramsey v. Ramsey,* 96 Idaho 672, 683, 535 P.2d 53, 65 (1975) (dissenting opinion, Bakes, J.). The advantage of reserving jurisdiction over the pension rights and effecting a division of the actual monetary benefits if and when they accrue is that this approach allocates equally between the parties the risk that the rights may never vest and enables the court to better determine the actual proportion of the benefits that were derived from community property.

In *Ramsey v. Ramsey,* 96 Idaho 672, 535 P.2d 53 (1975), this Court ordered a lump sum settlement to be paid to the wife for her interest in a vested military pension. However, at the time of the divorce the military pension was both vested and matured, and the couple was receiving monthly pension checks. The trial court, in making the property division, found that the parties had been married for seventeen of the twenty years that the husband served in the Air Force and that, therefore, 17/20 of the retirement pay was community property. The trial court then awarded the wife 40% of her former husband's monthly retirement pay as he received it. This Court affirmed the finding that 17/20 of the husband's retirement pay was community property, but held that in Idaho, upon divorce, "each spouse should have immedi-

---

**6.** The problems encountered in valuing and dividing a contingent interest in pension benefits are discussed in Hardie, "Pay Now or Later: Alternatives in the disposition of retirement benefits on divorce," 53 Cal.St.B.J. 106–11 (1978); and Projector, "Valuation of Retire-

ment Benefits in Marriage Dissolution," 50 Los Angeles B.Bull. 229–38 (1975); *see also* Pattie, "In a Divorce or Dissolution Who Gets the Pension Rights: Domestic Relations Law and Retirement Plans," 5 Pepperdine L.Rev. 191, 249–60 (1978).

ate control of his or her share of the community property, or at least within a reasonable time." *Ramsey v. Ramsey*, 96 Idaho at 679, 535 P.2d at 60. We reversed and remanded the case to the trial court for a calculation of an appropriate lump sum award to the wife of her share of the community property portion of the retirement pension computed on the present value of the wife's interest in the pension, holding that:

"The trial court shall determine as of the date of the amended decree of divorce (November 21, 1972), the then present value of the defendant's retirement pay based on his life expectancy at that time. In computation of the present value, the trial court shall use the discount rate of 6% per annum for the purpose of arriving at the discounted value of such retirement pay. Thereafter the trial court shall compute the value of the plaintiff's interest in this retirement pay and enter judgment accordingly. From the date of entry of the decree of divorce until July 1, 1974, the balance due on the judgment shall bear interest at the rate of 6% per annum and after that date, the balance due on the judgment shall bear interest at the rate of 8% per annum. I.C. § 28–22–104, and S.L.1974, Ch. 229, p. 1586, amending § 28–22–104 as of July 1, 1974.

"The trial court shall further make provision for payment by the defendant to the plaintiff of the sum found due by reason of the retirement pay, such payment to be made within a reasonable time from the final judgment. *Larson v. Larson*, 95 Idaho 376, 509 P.2d 1297 (1973)." 96 Idaho at 679, 535 P.2d at 60.

In this case Douglas Shill was 43 years old at the time of the divorce. Had Shill maintained his employment as a paid fireman for another six months after the divorce, his right to draw a pension from the fund would at that time vest. Upon termination of Shill's employment for any reason after April 15, 1978, he would be entitled to draw a pension from the fund equal to at least "a monthly sum during the remainder of his life equal to forty per cent (40%) of the average paid fireman's salary or wage in this state . . . or a monthly sum equal to forty per cent (40%) of the said fireman's average monthly salary or wage . . . which said monthly sum shall vary annually according to the determination of the 'cost of living adjustment' . . . ." [7] Continued employment beyond twenty years service as a paid firefighter would result in an annual increase in available pension benefits until twenty-five years of service was reached, at which time the pension benefits, under statutory provisions effective at the time of the divorce in 1977, would reach 65% of the monthly base wage, adjusted for inflation. Further employment beyond twenty-five years service would not increase his retirement benefits.[8]

In *Van Loan v. Van Loan*, 116 Ariz. 272, 569 P.2d 214 (1977), the Arizona Supreme Court affirmed the trial court's award to the wife upon divorce of a share of her husband's military retirement benefits. The husband had joined the Air Force prior to the marriage and continued to work with the Air Force during the entire seventeen year marriage. The parties divorced prior to the time the husband's right to payment under the pension terms vested. The trial court awarded the wife "an interest in the retirement pay in an amount equal to one-half of the fraction 17 over the number of years served by [husband] in the Air Force if and when received by him." 569 P.2d at 215.

The New Mexico court in *Copeland v. Copeland*, 91 N.M. 409, 575 P.2d 99 (N.M. 1978), reversed a trial court's division upon divorce of contingent pension benefits which was based upon only the couple's cash contributions to the plan. The court addressed the two approaches to dividing the interest discussed above, and stated:

"It would appear that a flexible approach to this problem is needed. The trial court

---

**7.** I.C. § 72–1430A, in effect in 1977.

**8.** I.C. §§ 72–1430A to –1430F.

should make a determination of the present value of the unmatured pension benefits with a division of assets which includes this amount, or divide the pension on a 'pay as it comes in' system. This way, if the community has sufficient assets to cover the value of the pension, an immediate division would make a final disposition; but, if the pension is the only valuable asset of the community and the employee spouse could not afford to deliver either goods or property worth the other spouse's interest, then the trial court may award the non-employee spouse his/her portion as the benefits are paid." 575 P.2d at 104.

In *Cearley v. Cearley,* 544 S.W.2d 661 (Tex.1976), the Texas Supreme Court, in holding that the husband's rights to a military pension prior to accrual and maturity constituted a contingent interest in property and a community asset subject to consideration in a division of the estate upon divorce commented as follows upon the method of valuation and division:

"The administration of justice will best be served if contingent interests in retirement benefits are settled at the time of the divorce, even though it may be necessary in many instances for the judgment to make the apportionment to the nonretiring spouse effective if, as, and when the benefits are received by the retiring spouse. We approve this method of apportionment and award of contingent interests in military retirement benefits because of the uncertainties affecting the accrual and maturity of such benefits. This method will forego the difficulty of computing a present value and will fairly divide the risk that the pension may fail to mature." 544 S.W.2d at 666.

The trial courts in Idaho should have broad discretion to fashion an equitable division of contingent retirement bene-

fits upon dissolution of a marital community.[9] An award of a lump sum to a non-employee spouse may be the better remedy where there are substantial amounts of other liquid assets and the retirement either has occurred, as in *Ramsey,* or where retirement is imminent, such as where the employee spouse is close to mandatory retirement age. In those cases a reasonably accurate calculation of the present value of the pension benefits may be made by reference to actuarial tables which would indicate the pensioner's life expectancy and by discounting the sum that would be paid the pensioner during that period for the possibility the pension would not vest, reduced to present value. The presence of a substantial amount of other liquid assets will cushion the impact on the employee spouse of having to buy out the other spouse's interest. However, where the time for retirement is uncertain and where the value of the employee's monthly benefits is dependent upon the number of years of employment at retirement, a factor which may not be known at the time of the divorce, and where maintenance of the pension benefits after divorce will be from the employee spouse's separate property, or the property of a subsequent community, a reasonably accurate calculation of the present value of the pension rights derived from community effort may not be possible. In these cases, the trial court should consider withholding the retirement rights from the property disposition and decreeing that the parties hold the rights to the benefits as tenants in common. If and when the employee spouse does obtain retirement benefits the trial court can then determine what portion of the rights were derived from community property and divide the payments accordingly.

In order to effect an equitable disposition of the retirement benefits possessed by this

9. I.C. § 32–712(1) provides that:

"32–712. *Community property and homestead—disposition.—*In case of the dissolution of the marriage by the decree of a court of competent jurisdiction, the community property and the homestead must be assigned as follows:

"1. The community property must be assigned to the respective parties in such proportions as the court, from all the facts of the case and the condition of the parties, deems just, regardless of the ground or grounds on which the dissolution decree is rendered."

marital community, it will be necessary to remand this matter to the trial court to allow the parties an opportunity to present such evidence as it deems proper on the issue of the disposition of the parties' community property interest in the Firemen's Retirement Fund. *See Ramsey v. Ramsey*, 96 Idaho 672, 535 P.2d 53 (1975).

Reversed and remanded. Costs, excluding attorney fees, to appellant.

DONALDSON and BISTLINE, JJ., and DUNLAP, J. Pro Tem., concur.

SHEPARD, Justice, dissenting.

I am obliged to dissent because in my judgment the majority opinion adopts the least desirable of the policy alternatives posed by various competing social issues; ignores the previous decisions of this Court; and leaves the parties, particularly plaintiff-appellant ex-wife, in the worst of all possible worlds.

Although the majority opinion presents only a most truncated version of the facts, the record demonstrates that if financial exigencies might require the rule of the majority in some cases it is certainly not required, necessary, nor desirable in the instant cause.

The trial court in a carefully drafted memorandum opinion, findings of fact, conclusions of law and judgment meticulously set forth the financial facts and status of the parties. Of these findings there is no complaint. In monies and personal property the court divided approximately $33,000. In addition the community owned real property and it is not controverted that it was valued between $50,000 to $55,000 with an encumbrance of approximately $12,000. The court ordered that the real property be sold and the proceeds divided amongst the parties. Again, no one complains.

Although the majority opinion would have us believe that the calculation of the value of retirement benefits is not susceptible to "a reasonably accurate calculation," the record reveals counsel for plaintiff-appellant presented expert testimony indicating such values. Such values were calculated alternatively on a six percent, seven percent and eight percent discount factor and indicated values of approximately $60,000, $55,000 and $50,000 respectively. According to that expert witness his calculation was based on a 25 year in-service time as required by the statute. That evidence was rejected by the trial court solely on the basis that the correct method of establishing the value of the retirement benefits was the *cash* value at the time of the divorce. No objection was made or sustained as to the competency of the tendered evidence. Following the trial court's rejection of the proffered testimony and documentary evidence, an offer of proof was made to preserve plaintiff-appellant's record on appeal.

In *Ramsey v. Ramsey*, 96 Idaho 672, 535 P.2d 53 (1975) this Court held that retirement benefits must be considered community property and that "each spouse should have immediate control of his or her share of the community property, or at least within in a reasonable time." *See also Largilliere v. Largilliere*, 50 Idaho 496, 298 P. 362 (1931); *Larson v. Larson*, 95 Idaho 376, 509 P.2d 1297 (1973). In my judgment (and aside from the fact that *Ramsey* involved a military retirement) the facts and the rationale of the *Ramsey* decision are indistinguishable from the case at bar.

The Court in *Ramsey* held the wife to be entitled to a lump sum award of her community property interest in the husband's future retirement benefits and ordered the trial court to determine " * * * the then present value of the defendant's retirement pay based on his life expectancy at that time. In computation of the present value, the trial court shall use the discount rate of 6% per annum for the purpose of arriving at the discounted value of such retirement pay. Thereafter, the trial court shall compute the value of the plaintiff's interest in this retirement pay and enter judgment accordingly."

I would add that the majority holding in *Ramsey* was over and notwithstanding the vigorous dissent of the author of today's majority opinion. I find myself no more able to agree with his reasoning today than at the time of *Ramsey*.

In *Phillips v. Phillips*, 93 Idaho 384, 462 P.2d 49 (1969) a unanimous Court stated:

"When two people are divorced from each other, as we have said herein, there are certain obligations incumbent upon our courts. The first and most important thereof is to make provision for the custody, support and maintenance of the minor children, if any, of the parties. Thereafter the court should arrive at an equitable distribution of the community property accumulated by the parties in consideration of all the circumstances. *Thereafter the parties should go their own way with a dissolution of all obligation and debts to each other.* Unfortunately, ideal situations do not always exist and the situation must be modified according to the wisdom and discretion of the trial judge." (Emphasis added.) *Id.* at 388, 462 P.2d at 53.

In my judgment those words are no less correct than they were at the time of *Phillips.* When a marital relationship is severed it should be severed finally and totally. There are a host of compelling reasons for such a rule. Perhaps the most compelling is that the plaintiff-appellant ex-wife here is entitled to her share of the community property at the dissolution of the divorce or as soon thereafter as the financial exigencies will permit. *See Larson v. Larson, supra.* She should not be required to await the pleasure of the defendant-respondent as to when and if he will retire. She should not be required to litigate with the entity having administration of the Firemen's Retirement Fund or with a widow in the event (as the record seems to make likely) that defendant-respondent should remarry.

It would appear that there are three alternative solutions to the problem presented in the case at bar. One is the adoption of the rule utilized by the trial court that since there is speculation involved in determining value and a cash surrender value has at least the virtue of a tangible amount of money immediately available to the ex-spouse it should be so awarded. In contrast to its virtues that alternative has the vice of depriving a spouse of an equitable division of the community property.

The second alternative as suggested by plaintiff-appellant at trial has the virtue of a fair determination of the value of community property, a division as equitably determined by the trial court, and immediate possession. In the instant case I see no vice in the adoption of that scheme.

The third alternative is that suggested by the majority opinion which, in my judgment, has all of the vices and none of the virtues of the other alternatives.

I would reverse and remand for a lump sum award to the appellant of her community property interest in the respondent's future retirement benefits calculated in conformance with *Ramsey.* Since respondent has had no opportunity or necessity to submit evidence in opposition to that phase of appellant's case, he should be afforded the opportunity.