This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**HOPE LIBERTY SALAZAR**,

Petitioner-Appellee,

v.                                                                                          **NO. 30,079**

**ANTHONY JOHN SALAZAR,**

Respondent-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Angela J. Jewell, District Judge**

Johnson Family Law, P.C.
Barbara V. Johnson
Albuquerque, NM

for Appellee

Hunter Law Firm
Colin Hunter
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**VIGIL, Judge.**

**I.        INTRODUCTION**

Husband appeals from an order of the district court determining Wife's interest in Husband's PERA retirement account. We reverse and remand for further proceedings.

**II.    BACKGROUND**

The judgment and final decree of dissolution of marriage and custody was filed on October 24, 2008, with the district court reserving jurisdiction to determine Wife's interest in Husband's PERA retirement account at a status hearing in May 2009. Following the status conference, the district court entered its order finding that Wife's interest in Husband's PERA benefits "needs to be valued and reduced to present cash value," and the district court appointed Dr. John Myers as its expert pursuant to Rule 11-706 NMRA to assist the court on this issue. After Dr. Myers submitted his report, a hearing was held.

At the hearing, Husband presented testimony from a PERA representative that PERA does not conduct present day valuations of retirement benefits, and the earliest PERA can prepare an estimation of an employee's benefits is three years before the employee's eligibility for retirement. She also testified that PERA requires an order from the court identifying the community interest and an identification of the division of that interest between the parties in order to divide retirement benefits between the parties.

Husband testified that he was forty-two years old, had completed fourteen years of service, and that he believed he would be eligible to retire in September 2020. The PERA representative testified that a person is eligible for retirement under the state general plan 3 when he has completed twenty-five years of service with the state at any age, or on a sliding scale of service of years upon reaching the age of sixty.

Following the hearing, the district court filed its findings of fact and conclusions of law (order).  In pertinent part, the district court made the following findings of fact:

> 5.      In the case of *Ruggles v. Ruggles*, 116 N.M. 52, 860 P.2d 182 [(1993)], the Supreme Court stated:  We hold that the preferred method of dealing with these community assets is to treat them as all other community assets are treated on dissolution—namely, to value, divide, and distribute them (or other assets of equivalent value) to the divorcing spouses.  We realize that in some cases, given the innumerable variations in pension plans and the infinite variety in the circumstances of individual divorcing couples, it will not be possible or practicable to achieve this preferred method of distribution and that other methods, including the reserved jurisdiction [or] pay as it comes in method, will have to be utilized.
>
> . . . .
>
> 7.      Dr. Myers found that the present value of the community interest in [Husband's] PERA benefits as of the end of the community, is about $200,000.00, making each party's interest at $100,000.00.
>
> 8.      *Ruggles*, quoting from *Copeland v. Copeland*, 91 N.M. 409, 575 P.2d 99 [(1978)], states:  It would appear that a flexible approach to this problem is needed.  The trial court should make a determination of the present value of the unmatured pension benefits with a division of assets which includes this amount, or divide the pension on a pay as it comes

3

in system. This way, if the community has sufficient assets to cover the value of the pension, an immediate division would make a final disposition; but, if the pension is the only valuable asset of the community and the employee spouse could not afford to deliver either goods or property worth the other spouse's interest, then the trial court may award the non-employee spouse his/her portion as the benefits are paid.

. . . .

17. The community has no assets to pay [Wife] her present cash value of [Husband's] PERA benefits.

18. When the youngest child is school age, the work related day care expense will terminate or be substantially reduced, and [Husband] will have the means to pay to [Wife] her then interest in his PERA benefits, whether he has elected to retire or not.

19. Once [Husband] retires, a QDRO can be entered to pay directly to [Wife], her then community interest.

(Internal quotation marks omitted.) The district court then entered the following pertinent conclusions of law:

2. The [c]ourt finds that based on the individual circumstances of this divorcing couple, it is not possible or practicable to exercise the preferred method of distribution, that being to order [Husband] to pay at the time of divorce, the present cash value of [Wife's half] interest in his PERA benefits.

3. The [c]ourt chooses to exercise the reserved jurisdiction method.

4. The [c]ourt hereby reserves jurisdiction over the issue of distribution of [Wife's] interest in [Husband's] PERA benefits, until [the parties' youngest child], . . . reaches the age of six (6), that being [in] November . . . 2011.

4

5. If [Husband] does not elect to retire by November . . . 2011, then in that event, he shall commence to pay directly to [Wife], her then valued interest in his PERA retirement account. This shall be effective November 15, 2011, and each and every month thereafter[.]

6. The PERA Administration Agency shall be contacted in August of 2011, to determine [Wife's] community interest in [Husband's] PERA benefits. Contact shall be made by [Husband].

7. When [Husband] elects to retire, then in that event, counsel shall execute a QDRO, to be submitted to the PERA Plan Account Administrator.

## III. ANALYSIS

Husband appeals from the district court order, arguing that the district court erred in (1) making a determination that Wife's share of the his retirement benefits should be distributed before it is paid to Husband by PERA, and (2) in ordering PERA to perform a present value calculation of his benefits before he is eligible to retire. Wife also requests on appeal that we remand for the entry of an "Order Dividing PERA Retirement Benefits."

While the district court has wide discretion under *Ruggles* in crafting a remedy for the distribution of retirement benefits when the marital assets are insufficient to support immediate division of the value of the pension, the district court's remedy must be clearly expressed in its findings of fact, conclusions of law, and order. *See Ruggles*, 116 N.M. at 61-62, 860 P.2d at 191-92 ("[T]he trial court should have discretion in implementing [the lump sum] method, alone or in combination with other

methods, including in an appropriate case the reserved jurisdiction method, in distributing the nonemployee spouse's interest upon dissolution."); Rule 1-052 NMRA (requiring the district court to make findings of fact and conclusions of law when requested by a party in a non-jury trial).

The parties disagree as to the meaning of the district court order regarding the requirements of Husband paying retirement benefits to Wife. Moreover, the district court's oral statements from the bench appear to be different from the remedy directed in its written order. *See San Pedro Neighborhood Ass'n v. Bd. of Cnty. Comm'rs of Santa Fe Cnty.*, 2009-NMCA-045, ¶ 8, 146 N.M. 106, 206 P.3d 1011 ("We do not consider the oral ruling as a final order, but simply as instructive in determining the court's intent where an ambiguity exists in the court's decision." (internal quotation marks and citation omitted)). We conclude that the order contains material contradictions, inconsistencies, and vague and unworkable provisions that preclude effective review of the issues.

The unchallenged findings of fact establish that the lump sum distribution as advised under *Ruggles* is not a feasible method of distribution in this case. *See Ruggles*, 116 N.M. at 61-62, 860 P.2d at 191-92; *Stueber v. Pickard*, 112 N.M. 489, 491, 816 P.2d 1111, 1113 (1991) (stating that unchallenged findings of fact are binding on appeal). Thus, the district court was entitled in its discretion to fashion another method of payment of Wife's share in the retirement benefits. *See Ruggles*,

116 N.M. at 61-62, 860 P.2d at 191-92. This being said, we are at a loss to understand exactly what the district court ordered and why. The evidence is uncontradicted that Husband cannot retire by November 2011; however, the order speaks in terms of what may occur if Husband "elects" not to retire by November 2011. Moreover, what is supposed to happen in November 2011, if Husband "elects" not to retire is at best ambiguous. While it appears that the order contemplates monthly payments, it fails to specify the amount of the monthly payment, whether the monthly payments remain the same, or how long the payments are to continue. Moreover, and critical to our conclusion, the order makes no determination of the value of Husband's retirement, reduced to present value as of the date of the divorce, or what Wife's actual interest in the retirement account is.

Thus, the district court's failure to clearly state its findings and conclusions precludes our ability to engage in meaningful review of this issue. *See Foutz v. Foutz*, 110 N.M. 642, 645, 798 P.2d 592, 595 (Ct. App. 1990). We therefore remand for the district court to enter findings of fact, conclusions of law, and a final order regarding the court's decision pertaining to the method of distribution of benefits that clearly and effectively determines the issue for review in any further appeal. *See State ex rel. Human Servs. Dep't v. Coleman*, 104 N.M. 500, 505, 723 P.2d 971, 976 (Ct. App. 1986) ("Where doubt or ambiguity exists as to whether the [district] court considered relevant evidence, or where other findings are required, the ends of justice require that

the cause be remanded to the district court for the entry of additional findings and conclusions of law."), *abrogated on other grounds by State v. Alberico*, 116 N.M. 156, 861 P.2d 192 (1993).

In addition, the district court order requires Husband to contact PERA in August of 2011 "to determine [Wife's] community interest in [Husband's] PERA benefits." Husband contends this was error because the undisputed evidence before the district court is that PERA will not perform present day valuations. Alternatively, Wife asserts that this provision of the order should be ignored as harmless error because, she contends, the district court adopted Dr. Myers' finding that the present value of Wife's interest is $100,000, making this directive by the district court merely "superfluous." We conclude that the district court ordered PERA to value the benefits and that it was error to do so.

Although the order takes note of Dr. Myers' calculation of the present value, it does not adopt that calculation as the court's own finding of the present value of the pension. Instead, the order directs Husband to contact PERA in August 2011 to determine Wife's interest in the retirement benefits. No logical reading of the order leads to a conclusion other than that the district court intends to rely on PERA's valuation to establish Wife's interest in Husband's retirement benefits. However, the undisputed testimony at the hearing was that PERA does not perform present value calculations on retirement benefits. Thus, the district court erred in ordering Husband

to obtain a present value calculation of the value of Wife's share of his retirement benefits from PERA.

Upon remand, the district court must adopt a clear and definite method of valuation of the benefits accrued during the marriage. *See Gilmore v. Gilmore*, 2010-NMCA-013, ¶ 53, 147 N.M. 625, 227 P.3d 115 ("[U]nless and until our Supreme Court or Legislature decides that district courts are to default to a particular rule, formula, or methodology [for calculating division of retirement benefits between divorcing spouses], it is essential for effective appellate review on the issues that the court explain why it has chosen the formula or method of calculation that it uses."). The district court must first attempt to assign a present day valuation of the benefits as of the date of the divorce. *See Ruggles*, 116 N.M. at 67-68, 860 P.2d at 197-98; *Mattox v. Mattox*, 105 N.M. 479, 481, 734 P.2d 259, 261 (Ct. App. 1987) ("To value unmatured pension benefits, the trial court must determine their present value."); *Copeland*, 91 N.M. at 413-14, 575 P.2d at 103-04 ("The cases are in agreement that at the time of the divorce the court must place a value on the pension rights and include it in the entire assets, then make a distribution of the assets equitably. . . . The trial court should make a determination of the present value of the unmatured pension benefits with a division of assets which includes this amount, or divide the pension on a 'pay as it comes in' system.").

If the district court concludes that insufficient evidence exists to assign a present value under these circumstances, it must make a clear and supported finding for its determination, and in its discretion determine and clearly support its decision for the appropriate course of action for valuation and distribution under a "reserved jurisdiction" method. *Palmer v. Palmer*, 2006-NMCA-112, ¶ 15, 140 N.M. 383, 142 P.3d 971 (stating that under the "reserved jurisdiction" method, "only the formula for division is determined at the time of divorce" (internal quotation marks and citations omitted)); *Ruggles*, 116 N.M. at 67, 860 P.2d at 197 ("One such occasion [where deferred distribution should be employed] will arise when the court has no satisfactory evidence upon which to make a finding of present value."); 2.80.1600.10(A)(3) NMAC (12/28/2001) (providing that the court order must "divide[] the community interest in PERA retirement pensions or contributions . . . [including] the percentage or dollar amount of each party's interest in the gross pension as calculated at the time of retirement").

In making the foregoing determinations, the district court is entitled in its discretion to rely upon evidence previously presented of the present day value of the pension or, within its authority, request additional evidence to aid in its conclusion. *See Gilmore*, 2010-NMCA-013, ¶ 52 ("We will not in this case attempt to provide definite guidelines by which district courts in their mandated purpose to achieve an equitable result might determine which formula or method of calculation to use in

dividing benefits when the parties have not agreed to a particular formula or methodology.").

Finally, we note that the district court ordered that the parties execute a QDRO when Husband elects to retire. However, a QDRO is not applicable to retirement benefits distributed by PERA. *See* Attorney Instructions, Order Dividing PERA Retirement Benefits, available at http://www.pera.state.nm.us/forms/AttyInstOrderDivPERABen.pdf. Rather, the appropriate order to be entered pursuant to a division of PERA benefits in a divorce proceeding is an "Order Dividing PERA Retirement Benefits" as authorized by NMSA 1978, Sections 10-11-116 (1991) (amended 2010 and 2011), -130 (2005) (amended 2011), -136 (1995) of the New Mexico Public Employees Retirement Act and PERA Regulations 2.80.1600.1 to .50 NMAC (10/15/97) (amended 12/28/2001). *See* 2.80.1600.10 NMAC (providing requirements for orders dividing retirement benefits).

## IV.  CONCLUSION

The order of the district court is reversed and the case is remanded to the district court for further proceedings consistent with this Opinion.

**IT IS SO ORDERED.**

 

_____
**MICHAEL E. VIGIL, Judge**

11

WE CONCUR:

_____
**CELIA FOY CASTILLO, Chief Judge**

_____
**JONATHAN B. SUTIN, Judge**