Rohloff, Respondent, vs. Rohloff, Appellant.

*October 14—November 9, 1943.*

*William H. Markham* of Horicon, for the appellant.

For the respondent the cause was submitted on the brief of *August Kading* of Juneau.

ROSENBERRY, C. J.   The parties were married on the 14th day of June, 1940.   At the time of the marriage the defendant was fifty years of age and had lived alone on his farm for twenty years prior to that time.   The age of the wife does not appear.   One child, Mary Ann, was born of the marriage on November 26, 1941.   The complaint charges the defendant with cruel and inhuman treatment, and the plaintiff asks for a divorce from bed and board only.   After hearing the testimony of the plaintiff and her mother, the court directed judgment of divorce from bed and board for the plaintiff.   That part relating to the property is as follows:

"It is further ordered, adjudged and decreed,

"1. That no division of the property of the parties hereto be made at this time, excepting the sum of $400 now held by the plaintiff and which belongs to the plaintiff, which is to be used as follows: $100 to be paid to August Kading as balance of attorney fees due; $100 to Thiel & Allen for balance of attorney fees; and the other $200 shall be used to apply upon the payment ordered to be made by the court to the plaintiff for support money for herself and child.

"2. That the defendant be restrained from disposing of his personal property which has been listed pursuant to the findings of fact and conclusions of law as being:

"1. One city of Juneau school bond in the sum of $1,000 bearing 4% interest.

"2. One certificate No. 75503 in the Federal Savings & Loan Association.

"3. Twenty (20) U. S. adjusted service bonds of 1945 each of $50 denomination.

"That in the event the plaintiff or defendant desires to sell or dispose of any of the securities above listed, that a court order must be obtained prior to the assignment thereof.

"3. That the defendant may freely exercise the right of disposition of livestock and machinery used in the operation of his farm without any order from the court.

"4. That Mrs. Gebhardt, mother of the plaintiff, is entitled to the above which belongs to her.

"5. That the sum of $10 per week is awarded for support money at this time, subject to revision for the support of the plaintiff and her child, and after the sum of $200 in the bank is exhausted, payment shall be made at the rate of $10 per week, payable weekly on Friday of each week to the clerk of the court with the understanding that if it becomes burdensome to pay every week, that it may be paid twice a month.

"6. That the custody of the minor child, Mary Ann, is awarded to the plaintiff with the provision that the defendant may visit said child on the first and third Sunday of each month at the home of the plaintiff between the hours of two and five in the afternoon, it being understood that if his privilege to visit the child is to be exercised, that at least a day prior to the Sunday, the plaintiff shall be notified by the defendant of his intention to come and see the child.

"7. That the defendant file with this court a verified statement showing all of his income and expenses on or before the 15th day of March, 1943, and every six months thereafter."

On the motion to modify thereafter made by the plaintiff the sixth paragraph relating to the custody of the minor child and the right of visitation was modified. No question is raised here in regard to the custody of the child or her right to support.

It is considered that the judgment is inequitable and unjust. At the time of the marriage the defendant was a farmer fifty years of age. For more than twenty years he had lived upon the farm without a housekeeper,—apparently he had done

his own cooking and housekeeping. It does not appear that he had been previously married. It appears that he accumulated all but $600 of the property of which he was possessed at the time of the marriage.

The plaintiff was the daughter of a banker who had never resided upon a farm and knew nothing about farm life or farm operations. Her age is not stated but it is quite apparent from the record that she knew her way around in the world. After the marriage she took possession of the home, refinished and refurnished it to some extent to suit herself, somewhat against the protest of the defendant. It appears that the plaintiff and her mother, who resided in town, visited back and forth two or three times a week, and they apparently moved in upon the defendant as it appears that a stove used in the defendant's home was the property of the mother-in-law. It is quite evident that the defendant had little or nothing to say about the conduct of his household. He and his wife disagreed radically as to how to conduct it, what should be done and when it was to be done. It was differences over the plaintiff's conduct of the home that led to the charge of cruel and inhuman treatment. The plaintiff's father was the banker of the defendant, and after her father's death she transferred defendant's securities to him and quite evidently knew all about his financial situation. She must have known that in marrying a man fifty years of age, who had lived without the companionship of a woman for twenty years, they were likely to have difficulty in adjusting their lives. She appeared, however, to have been willing to take this risk. At the time she brought the divorce suit she had possession of his ready money amounting to $400 and all of his securities. It appears that upon going to the home of the defendant she commenced to keep a cash account of the defendant's income and his expenses. That seems somewhat unusual and must have been prompted by the thought that she might have use for it in the near future. The whole case wears

a mercenary aspect. It would be interesting and helpful to know just how the marriage was brought about,—certainly it has been a most unfortunate one for the defendant.

By the judgment, which is from bed and board only, the defendant is prevented from disposing of or incumbering his real property. He is enjoined from disposing of his securities. It is difficult to see why the clause relating to his right to freely exercise the right of disposition of livestock and machinery was inserted in the judgment, unless it was thought that the defendant might infer that he had no permission to sell any other personal property but that enumerated.

No testimony was taken in the case except that of the plaintiff and her mother. It appears from the testimony of the plaintiff that within a recent time she has inherited $11,000 from her father. No attempt was made to ascertain whether she had any additional estate. By the judgment as it now stands, the defendant is obliged to earn from his farm for the benefit of the plaintiff and her child $520 a year. Although it appears from the uncontradicted evidence of two physicians that the defendant is suffering from arthritis and chronic nervous indigestion which prevents him from doing hard work, the plaintiff thought he might have worked harder than he did. According to the account kept by plaintiff for the year ending July 11, 1942, the net income of the farm was $566. Incapacitated as he is from doing hard work, the defendant has little chance to comply with the terms of this judgment. He cannot incumber or dispose of his farm. If he dies his wife will inherit one half of it and if he does not make a will his child will inherit the other half. Apparently in making a property arrangement no consideration was given to the fact that the wife has an independent fortune. She seems to be a clever and must be an attractive and persuasive woman. She certainly has done well for herself in the two years since her marriage. While her age is not given, she is apparently con-

siderably younger than the defendant and she can confidently expect to inherit at least half of the real property and to have support for the rest of her life.

In divorce cases great and almost controlling weight is given to the decision of the trial judge. He has the parties and witnesses before him. In many, if not in most cases, he has some knowledge of the situation or can easily inform himself in regard to it, and is in a better position to pass upon the rights of the parties than is an appellate court. But for some reason, perhaps because the framing of the findings and judgment was left to counsel, it is apparent that some considerations have been overlooked in this case.

It is true that plaintiff asked for a divorce from bed and board forever and not for an absolute divorce. Although that is the prayer of her complaint it does not control the court. If the testimony in the case warrants the trial court in granting an absolute divorce, the court may do so even though the plaintiff asks only for a divorce from bed and board. *Estate of Kehl* (1934), 215 Wis. 353, 254 N. W. 639; *Shequin v. Shequin* (1915), 161 Wis. 183, 152 N. W. 823. It is quite apparent from the testimony that the lives of these two parties are upon entirely different planes. The plaintiff's previous standard of life has been very much higher than that of the defendant. He has lived alone for over twenty years, and there is no reasonable prospect that the lives of these parties can be adjusted and harmonized. It is considered therefore that the divorce should have been absolute and not one from bed and board.

In settling the property rights of the parties, some consideration should have been given to the fact that plaintiff has not contributed much, if anything, to the estate of the defendant. She left him two years after they were married and there was little if any opportunity for her under the circumstances to make any substantial contribution. It is considered that under the circumstances of this case there should be a

final division of the estate of the parties. There is no reason why the defendant should be in a condition a little worse than that of a share cropper on his own farm. On the other hand, he by his marriage assumed obligations which he should discharge in a reasonably satisfactory manner. It is considered that he should pay the plaintiff $2,000 as and for a final division of the estate of the parties; that he should pay for the support of the child $5 per week, the payment of which should be charged upon the land. While the conditions under which the defendant is permitted to visit his child seem to us to be such as to deprive him of any chance to become acquainted with his child, inasmuch as he must have with him his sister, and the interview must take place in the presence of the plaintiff and his sister, who was to accompany the child to the home of the defendant while the child is with the defendant. However, in view of the age of the child we do not feel that the provision made by the trial court should be disturbed at this time.

*By the Court.*—The judgment appealed from is reversed, and cause remanded with directions to the trial court to enter judgment as indicated in this opinion.

FRITZ, J., dissents.