494 P.2d 1025

Joy Shirley RIPATTI, Plaintiff-Respondent,

v.

Herman Wilford RIPATTI, Defendant-Appellant.

No. 10888.

Supreme Court of Idaho.

March 13, 1972.

Stephen Bistline, Sandpoint, for defendant-appellant.

W. W. Nixon, Bonners Ferry, for plaintiff-respondent.

McQUADE, Chief Justice.

In 1969, respondent Joy Shirley Ripatti brought an action for divorce against husband Herman Wilford Ripatti on grounds of extreme cruelty as defined in I.C. § 32–605. She did not request custody of two minor children who were twelve and eighteen years old at the time of trial in 1970. However, she did pray equitable distribution, *inter alia*, of a ranch and herd of cattle, alleged to be community property. In his answer, Herman denied Joy's charge

of extreme cruelty and affirmatively alleged extreme cruelty on her part. In a cross-bill he claimed that "some" of the cattle and realty were his separate property, and requested the court further award him as his separate property any community interest Joy might have, enabling him to provide a secure home for the children. Neither in these pleadings nor at trial did Herman request or consent to a divorce. Nevertheless, at the close of trial, the court denied Joy the divorce she sought, but decreed a divorce in favor of Herman.

In this appeal Herman challenges the power of the trial court to award a divorce not prayed in his cross-action; the court's finding that the cattle herd, started prior to marriage but subsequently maintained with community labor and funds, was community property; and the court's order awarding Herman the family home as his separate property but directing him to purchase in monthly installments his wife's community interest.

## I.

Neither party suggests, and our research does not reveal, a reported decision in another case involving a divorce decreed in favor of a defendant husband cross-claiming for certain community property. Analogous cases suggest conflicting policies. As a general rule, where a plaintiff is entitled to an absolute divorce but prays only a limited divorce, such as the "divorce from bed and board" authorized by statute in some states, a decree of absolute divorce has been held within the discretion of the

trial court in cases offering no reasonable hope of reconciliation.[1] However, that discretion has not been exercised in a wife's action for separate maintenance or limited divorce at the request of a guilty husband who has cross-complained for divorce, but has failed to prove adequate grounds.[2] Neither has relief beyond the prayer been granted where plaintiff is the wife suing solely for separate maintenance, even though grounds for divorce are established.[3] Taken together these cases appear to illustrate a policy of allowing relief not prayed where reconciliation is unlikely, opposed by a special reluctance to impose upon the complaining wife the status of divorcée where she does not seek it.

This conflict also manifests itself in appeals brought by prevailing cross-complainants from unrequested decrees of divorce entered in their favor. In Michigan and Tennessee, whose statutes allow the trial courts wide discretion in granting relief independent of the wishes of the parties, decrees of divorce awarded to wives cross-complaining for limited divorce or separate maintenance have been upheld.[4] These courts have emphasized the need to avoid problems, such as imposing celibacy on persons neither married nor unmarried, created by failure to grant full relief.[5] However, decisions in several other states have held, absent special statutory authority, that trial courts have no discretionary power to grant a defendant wife cross-complaining for limited divorce or separate maintenance, an unrequested absolute divorce.[6] These cases exemplify, in the cross-complaint context, the courts' reluctance to make di-

1. Plantt v. Plantt, 28 Tenn.App. 79, 186 S.W.2d 338 (1944); Lingner v. Lingner, 165 Tenn. 525, 56 S.W.2d 749 (1933); Stefan v. Stefan, 152 Neb. 23, 39 N.W. 2d 918 (1949); Hudson v. Hudson, 151 Neb. 210, 36 N.W.2d 851 (1949); Rohloff v. Rohloff, 244 Wis. 153, 11 N.W.2d 507 (1943). Cf. Coleman v. Coleman, 269 S.W.2d 730 (Ky.1954).

2. Yost v. Yost, 143 Neb. 80, 8 N.W.2d 686 (1943); Kastner v. Kastner, 90 Colo. 280, 9 P.2d 290 (1932).

3. Daniel v. Daniel, 171 So.2d 180 (Fla. App.1965); Davis v. Davis, 281 Ala. 59, 198 So.2d 787 (1967).

4. Ratcliffe v. Ratcliffe, 308 Mich. 488, 14 N.W.2d 127 (1944) (limited divorce); Herchenroeder v. Herchenroeder, 28 Tenn. App. 696, 192 S.W.2d 847 (1946) (separate maintenance). Cf. also Thompson v. Thompson, 168 Kan. 450, 213 P.2d 641 (1950), where wife cross-complained for separate maintenance, but testified that she would acquiesce in a divorce.

5. See discussion in Annotation, 14 A.L.R. 3d 703, 706–711.

6. LeSeuer v. LeSeuer, 197 Kan. 495, 419 P.2d 817 (1966); Lindeman v. Lindeman, 195 Kan. 357, 404 P.2d 958 (1965); Greene v. Greene, 371 Mich. 170, 123

vorcées of wives who seek to perpetuate the formal marriage tie.

■ Mindful of the difficulties created either by failure to grant full relief or by imposing an unsought status on the innocent spouse, whether wife or husband, we have elected to reverse the judgment of divorce and remand for another hearing under the new "irreconcilable differences" statute enacted during pendency of this appeal.[7] Since the new statute embodies no fault criterion, the trial court may grant Joy a divorce if, for "substantial reasons," the marriage has deteriorated beyond conciliation. Because there is now available to her a separate cause of action under a statutory provision previously unavailable, the case is remanded for further proceedings.[8]

## II.

The community property issues will remain viable if a divorce is awarded on grounds of irreconcilable differences. Rather than encourage redundant argument in a possible second appeal, we consider those issues now. The trial court found that appellant and his brother owned as partners certain land and cattle prior to the marriage. During World War II the brother purchased additional land in his name with partnership funds while appellant served overseas and married his wife, Joy,

in Australia. Upon his return, appellant settled with his brother by taking undivided interests in some 47 head of cattle and in the land on which he and the children now live.

■ Because appellant established his right to an even share of the cattle prior to marriage, those cattle remained his separate property even though he had married by the time of actual transfer.[9] However, the record shows that from this point forward the cattle were treated as community assets. As the herd turned over, the proceeds from sale were commingled with other revenue from ranch operations; the total income was declared joint income; the entire family participated in maintaining and marketing the herd; the cattle were pastured on the homestead; and Joy Ripatti contributed some $7,000 to $8,000 of her separate property to meeting expenses connected with the ranch.

■ Where proceeds from sale of separate property are commingled with community funds they are presumed to be community property[10] unless they can be identified and traced with reasonable certainty to their source.[11] Appellant in this case does not appear seriously to have attempted any such tracing or identification. Moreover, even if the funds were related to their separate source, the community

N.W.2d 271 (1963); Reed v. Reed, 130 Mont. 409, 304 P.2d 590 (1956); DeReus v. DeReus, 212 Iowa 762, 237 N.W. 323 (1931); Cawley v. Cawley, 59 Utah 80, 202 P. 10 (1921); 3 Nelson, Divorce and Annulment § 32.39, 409–410 (2d ed. 1945).

7. I.C. § 32–603 now reads, in pertinent part, as follows:
"*Causes for divorce.*—Divorces may be granted for any of the following causes:
* * * * *
"8. Irreconcilable differences."
A new section, I.C. § 32–616, has been added as follows:
"*Irreconcilable Differences.*—Irreconcilable differences are those grounds which are determined by the court to be substantial reasons for not continuing the marriage and which make it appear that the marriage should be dissolved."
*See* 1971 Idaho Session Laws, ch. 20, at 33–34.

8. *See, e. g.,* Leahy v. Leahy, 208 Or. 659, 303 P.2d 952 (1956); Clark, Law of Domestic Relations, § 13.9, 406–413 (1968).

9. *See* Fisher v. Fisher, 86 Idaho 131, 383 P.2d 840 (1963); I.C. § 32–903.

10. Rose v. Rose, 82 Idaho 395, 353 P.2d 1089 (1960); Gapsch v. Gapsch, 76 Idaho 44, 277 P.2d 278, 54 A.L.R.2d 416 (1954).

11. Stahl v. Stahl, 91 Idaho 794, 430 P.2d 685 (1967). The quantum of proof required to rebut the presumption in favor of the community has been variously described as "clear and satisfactory" (Ahlstrom v. Tage, 31 Idaho 459, 174 P. 605 [1918]), "clear and convincing" (Armer v. Armer, 105 Ariz. 284, 463 P.2d 818 [1970]), or simply a "preponderance" (Thaxton v. Thaxton, 75 N.M. 450, 405 P.2d 932 [1965]).

could claim an interest in the herd through the labor and industry of each member of the family,[12] including appellant himself as manager of the community.[13] Finally, the cattle themselves appear to have been commingled. Those purchased with proceeds from sale of the original herd, constituting separate property,[14] have been mixed over a period of two decades with those who were raised on the ranch and are community property.[15] In light of all these factors, we believe the trial court properly found from the testimony that the cattle were community property. In any event, such a finding, if based on conflicting evidence or evidence from which different inferences may be drawn, is conclusive on appeal.[16]

### III.

In his last assignment of error, appellant argues that he should not be required to purchase, at $225 per month, his wife's half-interest in the ranch and cattle. Appellant's fixed income is $400 per month, a total disability pension from the Veteran's Administration for crippling arthritis. In addition, appellant customarily earns approximately $3,000 per year from sale of cattle each autumn. His other expenses include support of two children and payment of a mortgage at the rate of $100 per month. In aggregate terms, his usual yearly income is $7,800, while the mortgage and court decree absorb $3,900, leaving a like amount for support of himself and the children.

I.C. § 32–712 provides the trial court wide discretion in disposing of the community property and homestead upon dissolution of a marriage.[17] Ordinarily, the court should award the spouses sole and immediate control of their determined shares;[18] but the court may award all community property to one spouse subject to an obligation to pay the opposing spouse half its value in monthly installments where, as here, the best interests of the parties and the children require that the family home remain intact.[19] The trial court's exercise of discretion in ordering payments of $225 per month has not been shown to violate a statute or cause a "serious inequity," and will not be disturbed on appeal.[20]

Judgment and decree of divorce are reversed and remanded for further proceedings to give the respondent an opportunity to amend her pleadings and to obtain a hearing thereon if she so desires. No costs allowed.

McFADDEN, DONALDSON and SHEPARD, JJ., and HAGAN, District Judge, concur.

12. *See* Gapsch v. Gapsch, *supra note* 10; *compare* Paschall v. Paschall, 79 N.M. 257, 442 P.2d 569 (1968).

13. Jenkins v. Jenkins, 110 Cal.App.2d 663, 243 P.2d 79 (1952).

14. Lepel v. Lepel, 93 Idaho 82, 456 P.2d 249 (1969).

15. Evans v. Evans, 92 Idaho 911, 919, 453 P.2d 560 (1969).

16. Fisher v. Fisher, *supra, note* 9; Rose v. Rose, *supra, note* 10.

17. In pertinent part the statute provides: "In case of the dissolution of the marriage by the decree of a court of competent jurisdiction, the community property and the homestead must be assigned as follows:
"1. The community property must be assigned to the respective parties in such proportions as the court, from all the facts of the case and the condition of the parties, deems just, regardless of the ground or grounds on which the dissolution decree is rendered.
"2. If a homestead has been selected from the community property, it may be assigned to the innocent party, either absolutely or for a limited period, subject in the latter case to the future disposition of the court; or it may be divided or be sold and the proceeds divided."

18. Largilliere v. Largilliere, 50 Idaho 496, 298 P.2d 362 (1931).

19. *Cf.* Meredith v. Meredith, 91 Idaho 898, 434 P.2d 116 (1967); Lawson v. Lawson, 87 Idaho 444, 394 P.2d 1008 (1964); Jackson v. Jackson, 87 Idaho 330, 393 P.2d 28 (1964).

20. Loveland v. Loveland, 91 Idaho 400, 422 P.2d 67 (1967).