739 P.2d 330 (1987)
112 Idaho 1301
Karen Mae SHURTLIFF, Plaintiff-Respondent,
v.
Donald Kay SHURTLIFF, Defendant-Appellant.
No. 16354.
Supreme Court of Idaho.
May 26, 1987.
*331 M. Karl Shurtliff, Evans, Keane, Koontz, Boyd & Ripley, Boise, for defendant-appellant.
Dennis W. Olley, McDermott, McDermott, Zollinger & Box, Pocatello, for plaintiff-respondent.
HUNTLEY, Justice.
On February 14, 1959, Karen Mae Shurtliff and Donald K. Shurtliff were married. On April 13, 1984, Karen filed suit for divorce alleging that her husband had been guilty of adultery and extreme cruelty. Karen sought the following relief: (1) maintenance, including educational expenses; (2) a disparate division of community *332 debts and assets between the parties; and (3) attorney fees and costs.
The record reveals that Mrs. Shurtliff had been a housewife and homemaker for the twenty-six year period of marriage. Mr. Shurtliff's job with the railroad, which currently pays over $54,000 a year, was the sole source of financial support. Further, Mr. Shurtliff totally controlled the finances and economic situation of the couple. Even though Mrs. Shurtliff had only an eleventh grade education, Mr. Shurtliff did not want her to pursue an education. In addition, he did not want her to seek employment outside the home, and during his wife's brief employment with American Micro Systems, Inc., he telephoned her employer stating she was quitting. The trial court found Mr. Shurtliff was guilty of adultery.
A disparate distribution of property was made. Mr. Shurtliff was required to pay all the community debts.[1] Spousal support was set at $750.00 per month for five years and he was required to pay Karen's education expenses in the sum of $1,400 per year for five years. Mr. Shurtliff has appealed to the Supreme Court from the district court's affirmance of the trial court's judgment and decree of divorce.
Mr. Shurtliff first contends that many of the trial court's findings of fact were not based on substantial and competent evidence. If the findings are supported by substantial and competent, though conflicting, evidence, error will not be deemed to exist. In Brammer v. Brammer, 93 Idaho 671, 674, 471 P.2d 58, 61 (1970), this Court further stated that "[t]he trial judge is the arbiter of conflicting evidence and his determination of the weight, credibility, inferences and implications thereof is not to be supplanted by this Court's impressions or conclusions from the written record." Therefore, this Court is bound to uphold the findings of fact made by the trial court unless there is an indication that the court's findings are not supported by substantial and competent evidence.
The district court reviewed the transcript and noted each finding of fact was supported with sufficient evidence, its decision on appeal making specific reference to the trial transcript and testimony. Our review of the record supports that analysis. With the special deference given to the trial court's findings and the substantial evidence supporting each of the trial court's findings, this Court is left with no other alternative but to affirm the trial court's findings of fact.
Further, the appellant contends that the trial court erred in concluding that a disparate division of property was warranted. I.C. § 32-712 lists several factors[2] which *333 may be considered in departing from the general rule of an equal division of property. The choice between substantial equality or disparate division of property is to be made by the trial judge based upon the factors set out in I.C. § 32-712.
The disparity in the property division herein is due largely to the assignment of the community debts to Mr. Shurtliff. The question before this Court is whether, by doing so, the trial court abused its discretion. The findings of fact contain ample justification for the disparate division of property. The factors listed in I.C. § 32-712 which justify disparate division in this case include the duration of marriage, employability of each spouse, and the present and potential earning capability of each party. Hence, the disparate property division cannot be deemed an abuse of discretion.
In addition, the appellant argues that the court erred in requiring spousal support of $750 per month, from August 1, 1985 to December 31, 1990, together with $1,400 per year ($700 each six months) for five years, to assist in meeting her educational expenses. I.C. § 32-705 provides that the court may grant maintenance for the innocent spouse if it finds that the innocent spouse seeking maintenance lacks sufficient property to provide for his or her reasonable needs and is unable to support himself or herself through employment.
The trial court found that Mrs. Shurtliff's personal property and her share of community property were insufficient to meet her needs. Further, the trial court found that "plaintiff was unable to support herself through employment." Therefore, following the guidelines for awarding maintenance outlined in I.C. § 32-705, the trial court granted maintenance and educational expenses equaling $116 per month to Mrs. Shurtliff. Since the trial court supported the award of maintenance with reference to testimony and the record, and since the trial court is afforded a presumption of correctness, this Court does not find error in granting support plus educational expenses to Mrs. Shurtliff.
The suggestion that Mr. Shurtliff will be financially impaired by paying maintenance and educational costs to his wife cannot be supported by the facts on record. In the trial court's findings of fact, it was established that Mr. Shurtliff's net monthly income is $2,554 and that he has monthly expenses of $1,074.67. This income, diminished by Mr. Shurtliff's expenses, still leaves adequate funds to meet Mrs. Shurtliff's monthly needs of $750 spousal support, $116 per month educational supplement (1,400  12) for a total of $866 per month.

 Mr. Shurtliff's Monthly Income: 2,554
 Less Mr. Shurtliff's monthly
 Expenses 1,074.67
 Less Spousal Support 750.00
 Less Education Supplement 116.00 1,941
 _____
 Excess Income for debt retirement 613

The excess $613 per month coupled with his salary level in excess of $54,000 per year would appear to provide sufficient funds for Mr. Shurtliff to pay for any outstanding debts, half of which are owed to the wife's parents and attorney. Mr. Shurtliff has not demonstrated that he will be unduly burdened by fulfilling his financial obligation to his wife.
Mr. Shurtliff argues that it is an abuse of discretion for the trial court to require him to pay the $116.00 per month educational supplement for five years when the status of LPN can be obtained in two years providing Mrs. Shurtliff with some enhanced earning level.
Generally speaking, the level of spousal support to be awarded is measured by the difference between the resources available and the reasonable needs of the parties, with due consideration to the current status of the parties.
Although the spousal maintenance provisions of I.C. § 32-705 do not contemplate burdening the husband with unlimited *334 schooling expenses for such purposes as cultural refinement or excessively expensive curricula, the statute does contemplate that there are situations where initial higher spousal support levels are justified for retraining purposes where such training would tend to facilitate the achievement of enhanced earning capacity and early return to economic self-sufficiency. The higher front-end payments will make it possible to so shorten the total period of support required so as to decrease the over-all support needed.
In the instant case, the amount and duration of educational support awarded does not appear to be an abuse of discretion, the trial court specifically finding that education beyond the LPN level was necessary to the attainment of an adequate income level.
Further, the community debts totaled $24,612.85. The court ordered that the anticipated tax refunds of $8,400.00 for 1984 and $8,372.05 for 1983 be applied toward retirement of the community debt. The application of those refunds as directed by the court would have eliminated two-thirds of the debt. Since Mr. Shurtliff violated the court order, neither applying the $16,772.05 to the debt nor accounting for it, he will have to finance or pay the debt from his monthly income, retiring it at $600 per month.
Next, Mr. Shurtliff urges error in that the trial court did not consider future retirement income in computing the level of spousal support. There are two problems with this contention. First, spousal support terminates in 1990 and retirement age is not reached until four or five years after that date. Secondly, neither party requested consideration of the retirement benefits at the trial level. Therefore, in assessing Mrs. Shurtliff's needs for the next five years, the trial court would not be required to, nor could it properly, consider the retirement benefits. The trial court was properly concerned about her short-term needs and the future retirement benefits would not affect the need for spousal support during the initial five years.
Finally, the appellant argues that each party should bear the costs of attorney fees. The awarding of attorney fees in a divorce action is also left to the discretion of the trial court. I.C. § 32-704 permits the court to consider the financial resources of both parties and the factors set forth in I.C. § 32-705 in making the determination of who will bear the burden of attorney fees. The trial court's findings of fact in relationship to the financial status and earning capacities of the parties has already been discussed. It is evident that the trial court did not abuse its discretion by awarding attorney fees to Mrs. Shurtliff and requiring Mr. Shurtliff to pay those attorney fees as part of the community debt.
In conclusion, the grounds for divorce, the financial status of the parties, the respondent's need for support and further education, the relative earning capacities of the parties, and the status of community debts provide the trial court with adequate justification for its decision of a disparate property division and awarding maintenance to Mrs. Shurtliff. Therefore, the trial court decision is affirmed.
Costs and attorney fees to respondent.
DONALDSON and BISTLINE, JJ., concur.
BAKES, J., concurs in the judgment.
BISTLINE, Justice, specially concurring.
This appeal presents an extremely vexing and close question. There is much in the dissenting opinion of the Chief Justice with which I agree, particularly where he questions the trial judge's award of a five-year college education to the plaintiff wife  at the defendant-husband's expense. This award was made under the auspices of the 1980 legislature, I.C. § 32-705. Prior to that legislation becoming effective, I do not believe that there ever was a divorce case in Idaho where a trial judge would have given any consideration to such a proposition as that before us today. Justice Shepard is eminently correct in noting that there is no pretense that the situation is that of the one spouse (usually the wife) *335 endeavoring to and contributing to the other spouse's obtaining an education, "i.e., the familiar complaint of the wife who made it possible for the husband to attend medical school." I have been, and remain, disposed toward the view that there is nothing inherently wrong with that concept, and many courts across the country have adopted that view. However, that question usually arises and is answered in the context of considering a diploma and the ensuing license to enter into a lucrative practice as an item of community property to be considered along with all other community assets in making an equitable division and distribution.
The spousal support statute is of an entirely different ilk; hence, in this case especially, where community property is practically nil, and may as well be considered nil, what we have are two persons who exit a marriage of long duration and there are no assets available for either. The husband has, and has had for the many years, a good-paying job. It is to be much doubted that the plaintiff-wife has any interest whatever in that job, but as matters stand now, for the next five years she probably has an insurable interest in the defendant, who will be her source of support while she pursues an education which it is hoped will result in her becoming endowed with a degree in microbiology, and possibly a position where she will be compensated accordingly  and yet owe the defendant nothing in return. Nor will the defendant have any claim on her education  for the simple reason that it is not community property.
Back of it all, it is to be remembered, the husband's management squandered away over 20 years of good income, but at the same time the plaintiff-wife  so far as we know  acquiesced in his conduct and remained with him.
Now, this may be the set of circumstances which the legislature envisioned when it enacted I.C. § 32-705. Such, however, is aught but speculation. The fact is that there is such legislation, and unless it is alleged and ruled to be unconstitutional, it governs Idaho's judges who preside in divorce actions. In this particular case I am not persuaded that the magistrate erred in complying with the statute. His findings are before us. Those findings point to the evidence which sustains them. Hence, I do not see that we are at liberty to interfere.
Mention should also be made that our appellate review is second in time, because we are favored with an extremely careful and analytical appellate review by Judge Woodland, with myself noting only one statement with which there is some question. Judge Woodland states that the award of spousal maintenance under § 32-705 is within the discretion of the trial court and cites to two pre-1980, hence pre- § 32-705 (1980) cases.[1] I am unable to agree. It seems clear that the legislature has eliminated the discretion which trial courts formerly had in passing on alimony requests. Instead, the courts have been furnished with legislative doctrine for guidance in this area  much the same as district courts have been furnished a checklist to follow in sentencing those who are convicted of first degree murder.
SHEPARD, Chief Justice, dissenting.
Some of the more vocal and harsh critics of the appellate system of justice assert that the courts too often engage in "creative cowardice" in applying worn out aphorisms of the law such as "the findings are sustained by substantial and competent although conflicting evidence" as a method of avoiding the facing and dealing with difficult decisions. In the case at hand, I would suggest that an equally applicable axiom of the law provides that a decision of a trial court involving the exercise of discretion will not be sustained if that discretion has been abused.
In my view, the stark results of the instant case indicate that the majority opinion has ignored such an abuse of discretion. The defendant-appellant is of limited education, a locomotive engineer, and earns a take-home pay of approximately $2,500.00 per month. There is no showing that his *336 income is subject to increase, but almost certainly his income will decrease due to his changed tax status. Nevertheless, he has been ordered to pay in excess of $85,000.00 over a period of five years. That obligation in large part results from the court's order that he support his former wife during, and pay the costs of, seven years of college education. A further part of the indebtedness results from the court's order requiring plaintiff-appellant to shoulder the approximately $24,000.00 of community indebtedness. Another part of the obligation consists of approximately $6,700.00 of attorney fees awarded to the plaintiff-respondent ex-wife. I would hold that those above-stated facts alone indicate an abuse of discretion on the part of the trial court.
One might assume, given the size of the obligation placed upon defendant-appellant, that the parties enjoyed some degree of affluence and property of some value. Such is not the case. After a marriage of 26 years the parties separated, and plaintiff-respondent wife sought a divorce. The record reveals that the sole community property of the parties was household goods and motor vehicles of a value of less than $10,000.00. That personal property was divided between the parties. Although the parties at one time owned a residence, the indebtedness thereon was not paid and the mortgage holder foreclosed. The record contains the inference that the equity of the parties is exceeded by the mortgage indebtedness, and hence defendant-appellant will be responsible for an additional unknown amount of community debt resulting from such foreclosure. The record discloses that the parties possessed no cash or other liquid assets, no insurance policies, no value in any real estate and only minimal personal property values. During the marriage the parties had gone through four bankruptcies, and a portion of the debt assigned to the defendant-appellant was payments on a then existing wage earner plan. Nevertheless, the trial court has ordered the defendant-appellant to pay approximately $85,000.00 during the course of five years. In a different legal context, such as medical indigency cases, this Court would not hesitate to declare the defendant-appellant insolvent except for his monthly earning capacity.
I find no evidence that either of the parties is solely responsible for the lack of community assets, finances, or resources, and evidently during the marriage both parties enjoyed the available financial resources of the community. The children of the marriage have reached majority and are independent of the parties here.
At the time of the trial the plaintiff-respondent was a 46-year-old woman in good physical health, of substantial intellectual capacity, and she had regained her emotional stability. She had completed a two-year degree granting program at Idaho State University and was capable as a licensed practical nurse of earning at least $800.00 per month gross income. The costs of that program, together with her support during that time, was to be paid by the defendant-appellant. In my view there is no testimony and no finding by the trial court adequately demonstrating that the plaintiff-respondent is unable to support herself absent an additional five-year college education to be provided by the defendant-appellant. In my view the only possible basis for the decision of the trial court is the testimony of the plaintiff-respondent who stated that she "desired" to obtain a college degree in either microbiology or pharmacy. While such a desire is undoubtedly laudable, it does not in my opinion rise to the level of an obligation which a court may place upon the defendant-appellant in this particular and peculiar set of circumstances.
Unanimous Courts in Glavin v. Glavin, 94 Idaho 813, 498 P.2d 1286 (1972) and Phillips v. Phillips, 93 Idaho 384, 462 P.2d 49 (1969) made clear that spousal support should only be awarded where the wife is unable, as contrasted with unwilling, to support herself. The rule laid down by the Court in those cases has been essentially codified in I.C. § 32-705, with the only change being cosmetic in nature by making an award of spousal support gender neutral. In the instant case plaintiff-respondent specifically testified that on completion *337 of her LPN degree she would be able to obtain employment. I would hold that the evidence is insufficient to establish that as of July 1985 plaintiff-respondent was unable to support herself and therefore spousal support was necessary from defendant-appellant. I would remand for further consideration, and if necessary the taking of additional evidence on that question. In any event, I would hold that the record is totally devoid of any evidence even suggesting that plaintiff-respondent is or will be unable to support herself in the absence of five years additional college education.
As to that portion of the trial court decision granting plaintiff-respondent a divorce and specifying the grounds therefore, the division of the community property and the assignment of the community debts to the defendant-appellant, I would affirm the decision of the trial court as being supported by the evidence.
NOTES
[1] The community debts were the following:

Plaintiff's LPN program at ISU
 $3,009.80 less PELL grant received in
 the amount of $712.00 $2,297.80
Plaintiff's attorney fees through March
 20, 1985 3,962.50
Mr. and Mrs. E.I. Payne (wife's parents)
 (promissory note) 8,160.00
Mr. and Mrs. E.I. Payne for additional
 loan 600.00
Barlow's 945.00
First Interstate 400.00
Master Muffler 511.00
Park Price 351.93
Dr. Bateman 177.00
Dr. Gilbert 768.00
Pocatello Radiology 356.50
Pocatello Regional Hospital 617.55
Pocatello Regional Hospital 226.80
Tom's Pharmacy 153.13
State Farm Insurance 2,211.00
The amount of debt, if any, as a result
 of the foreclosure of the home located
 at 921 Northgate, City of Pocatello,
 Bannock County, Idaho
Lee Hawkes Transfer & Storage unknown
Chapter 13 Bankruptcy 2,874.64

[2] Community property and homestead  Disposition.  ... .
1(b) Factors which may bear upon whether a division shall be equal, or the manner of division, include, but are not limited to:
(1) Duration of the marriage;
(2) Any antenuptial agreement of the parties; provided, however, that the court shall have no authority to amend or rescind any such agreement;
(3) The age, health, occupation, amount and source of income, vocational skills, employability, and liabilities of each spouse;
(4) The needs of each spouse;
(5) Whether the apportionment is in lieu of or in addition to maintenance;
(6) The present and potential earning capability of each party; and
(7) Retirement benefits, including but not limited to, social security, civil service, military and railroad retirement benefits.
[1] Cites for the two cases are: Glavin v. Glavin, 94 Idaho 813, 498 P.2d 1286 (1972); and Loveland v. Loveland, 91 Idaho 400, 422 P.2d 67 (1967).