822 P.2d 982

**Eileen MASLEN, Plaintiff–Counterdefendant, Respondent,**

v.

**Holbrook MASLEN, Defendant–Counterclaimant, Appellant.**

**No. 18734.**

Supreme Court of Idaho, Boise, November 1990 Term.

Dec. 3, 1991.

Cosho, Humphrey, Greener & Welsh, Boise, for defendant-counterclaimant, appellant. Stanley Welsh, argued.

Hogue, Speck & Aanestad, P.A., Ketchum, for plaintiff-counterdefendant, respondent. Tracy Dunlap, argued.

BOYLE, Justice.

In this appeal from the magistrate's decision in a divorce action, we are called upon to determine whether it was error for the magistrate to award a portion of the husband-appellant's pension benefits to the wife-respondent. We must also determine whether the magistrate erred by not making a lump sum distribution of the non-

employee spouse's interest in the pension benefits, and whether the community interest was calculated in a proper manner.

The appellant, Holbrook Maslen, is an airline pilot for United Airlines. Mr. Maslen and the respondent, Eileen Maslen, were married on January 19, 1985. On March 6, 1985, Mr. Maslen filed for divorce in the state of Nevada, and thereafter on August 21, 1985, Mrs. Maslen filed for divorce in Blaine County, Idaho, where the divorce was finally granted on September 8, 1987.

The magistrate found that the only community assets were two pension plans with Mr. Maslen's employer, United Airlines. The community debts were divided equally and the magistrate ruled that all separate property of the parties remained separate property during the course of the marriage.

The first of the two pension plans is a "fixed benefit" plan (hereinafter "FB Plan"), in which Mr. Maslen is fully vested.[1] This plan entitles him to a fixed, life-time monthly benefit upon retirement or termination of his employment with United Airlines. Under the FB Plan, the employee's benefit, funded entirely by United Airlines, is calculated as a percentage of the employee's current salary at the time of retirement, multiplied by the number of months of participation in the plan. Although normal retirement is age sixty, a participant is eligible to retire any time after attaining age fifty, however, early retirement would result in a lower retirement benefit.

The second pension plan is a "directed account" plan ("DA Plan") in which Mr. Maslen is also fully vested. Under this plan United Airlines contributes into his account an amount equal to nine percent of his monthly salary. Mr. Maslen has investment control over the funds in this directed account plan. Under this plan no guaranteed retirement benefit is promised. Rather, the retirement benefit is based on the value of the account or the accrued benefit, at the time of distribution or retirement. The total benefit accrued in this plan is the sum of the accumulated contributions plus or minus earnings or losses on the accumulations.

Relying on I.C. § 32–906,[2] the magistrate determined the community's interest in each plan by determining Mr. Maslen's entitlements as of the date of the marriage and the date of the divorce. The magistrate then subtracted the amount to which he was entitled as of the date of marriage from the amount to which he was entitled on the date of divorce. The difference between these two amounts was determined by the magistrate to be the portion of the benefits acquired during the marriage, and therefore held the difference to be the community portion of the pension benefits.

Mrs. Maslen's one-half share of the community portion of the DA Plan benefits

---

1. The term "vested," as it is used in relation to pension rights, "refers to a pension right which is not subject to a condition of forfeiture if the employment relationship terminates before retirement." *In re Marriage of Brown*, 15 Cal.3d 838, 544 P.2d 561, 126 Cal.Rptr. 633 (1976).

2. Idaho Code § 32–906 states:
   **32–906. Community property—Income from separate and community property—Conveyance between spouses.**—(1) All other property acquired after marriage by either husband or wife is community property. The income of all property, separate or community, is community property unless the conveyance by which it is acquired provides or both spouses, by written agreement specifically so providing, declare that all or specifically designated property and the income from all or the specifically designated property shall be the separate property of one of the spouses or the income from all or specifically designated separate property be the separate property of the spouse to whom the property belongs. Such property shall be subject to the management of the spouse owning the property and shall not be liable for the debts of the other member of the community.
   (2) Property conveyed by one spouse to the other shall be presumed to be the sole and separate estate of the grantee and only the grantor spouse need execute and acknowledge the deed or other instrument of conveyance notwithstanding the provisions of section 32–912, Idaho Code; provided, however, that the income from such property shall not be the separate property of the grantee spouse unless this fact is specifically stated in the instrument of conveyance.

was offset by a prejudgment distribution of community property and her portion of the community debts. Her marital share of the DA Plan benefits was to be paid immediately in a lump sum by the plan administrator, and her share of the FB Plan benefits was to be paid in monthly payments to her directly from the plan administrator.

On appeal the district judge affirmed the magistrate's ruling. Mr. Maslen then appealed to this Court. We assigned the case to our Court of Appeals, which also affirmed. The case is now before this Court on a petition for review.

Mr. Maslen asserts that the magistrate erred in three ways. The first alleged error was that the magistrate abused his discretion by dividing the community assets, *i.e.*, the pension benefits accrued during the length of the marriage, equally between the parties. The second alleged error is that the trial court failed to properly calculate the value of the community interest in the pension plans. The third alleged error is that the magistrate should have ordered a lump sum award of the nonemployee spouse's interest in the FB Plan pension benefits.

### I.

■■■ In Idaho, separate property is defined in I.C. § 32–904 and § 32–905. Community property is defined in I.C. § 32–906 as "[a]ll other property acquired after marriage by either husband or wife is community property." *See Shill v. Shill,* 115 Idaho 115, 765 P.2d 140 (1988). Retirement benefits, to the extent earned during mar-

riage, are deemed community property. *Griggs v. Griggs,* 107 Idaho 123, 686 P.2d 68 (1984); *Shill v. Shill,* 100 Idaho 433, 599 P.2d 1004 (1979); *Ramsey v. Ramsey,* 96 Idaho 672, 535 P.2d 53 (1975). Generally, community property will be divided in a substantially equal manner unless there are compelling reasons which justify otherwise. I.C. § 32–712(1);[3] *Rice v. Rice,* 103 Idaho 85, 645 P.2d 319 (1982). Therefore, absent compelling reasons which justify otherwise, it is settled beyond dispute that there shall be a substantially equal division of pension benefits which were acquired during the time of the marriage. I.C. § 32–712; *Ramsey v. Ramsey,* 96 Idaho 672, 535 P.2d 53 (1975); *accord Shill v. Shill,* 115 Idaho 115, 765 P.2d 140 (1988). It is likewise well established that the trial court's decision to equally divide community property will be reviewed on an abuse of discretion standard, *Hooker v. Hooker,* 95 Idaho 518, 511 P.2d 800 (1973); *Ripatti v. Ripatti,* 94 Idaho 581, 494 P.2d 1025 (1972). Further, "[t]he disposition of community property is left to the discretion of the trial court, and unless there is evidence in the record to show an abuse of that discretion, the award of the trial court will not be disturbed." *Koontz v. Koontz,* 101 Idaho 51, 52, 607 P.2d 1325, 1326 (1980).

■■■ Mr. Maslen asserts that the parties never established the requisite "marital community" to which benefits and detriments would accrue. According to him this lack of "marital community" is demonstrated by the brevity of the marriage and the fact that it was troubled from its onset, as

---

3. **32–712. Community property and homestead—Disposition.**—In case of divorce by the decree of a court of competent jurisdiction, the community property and the homestead must be assigned as follows:

1. The community property must be assigned by the court in such proportions as the court, from all the facts of the case and the condition of the parties, deems just, with due consideration of the following factors:

(a) Unless there are compelling reasons otherwise, there shall be a substantially equal division in value, considering debts, between the spouses.

(b) Factors which may bear upon whether a division shall be equal, or the manner of division, include, but are not limited to:

(1) Duration of the marriage;

(2) Any antenuptial agreement of the parties; provided, however, that the court shall have no authority to amend or rescind any such agreement;

(3) The age, health, occupation, amount and source of income, vocational skills, employability, and liabilities of each spouse;

(4) The needs of each spouse;

(5) Whether the apportionment is in lieu of or in addition to maintenance;

(6) The present and potential earning capability of each party; and

(7) Retirement benefits, including, but not limited to, social security, civil service, military and railroad retirement benefits.

indicated by the initiation of divorce proceedings very early in the marriage and that the parties never established a regular pattern of living together. He contends that the trial court disregarded these compelling reasons and improperly ordered an equal division of the pension benefits. We disagree.

Mr. Maslen cites two cases in which an unequal division of community assets were upheld—*Shurtliff v. Shurtliff*, 112 Idaho 1031, 739 P.2d 330 (1987), and *Hentges v. Hentges*, 115 Idaho 192, 765 P.2d 1094 (Ct. App.1988).

It is within the discretion of the trial court to determine whether there are any compelling reasons that would justify a division of the community property that is not substantially equal. *Ross v. Ross*, 117 Idaho 548, 554, 789 P.2d 1139, 1145 (1990). In *Hentges* our Court of Appeals stated:

On an issue of abuse of discretion, the appellate inquiry is multi-tiered: (1) whether the lower court rightly perceived the issue as one of discretion; (2) whether the court acted within the outer boundaries of such discretion and consistently with any rules applicable to specific choices; and (3) whether the court made its decision by an exercise of reason.

115 Idaho at 195, 765 P.2d at 1097. *See also State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989), and *Sun Valley Shopping Center v. Idaho Power*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991).

In *Shurtliff,* this Court said:

The disparity in the property division herein is due largely to the assignment of the community debts to Mr. Shurtliff. The question before this Court is whether, by doing so, the trial court abused its discretion. The findings of fact contain ample justification for the disparate division of property. The factors listed in I.C. § 32–712 which justify disparate division in this include the duration of marriage, employability of each spouse, and the present and potential earning capability of each party. Hence, the disparate property division cannot be deemed an abuse of discretion.

112 Idaho at 1034, 739 P.2d at 333. Likewise, in *Hentges,* our Court of Appeals found there was no abuse of discretion. 115 Idaho at 195–96, 765 P.2d at 1098.

In dividing the community property in this case, the magistrate made findings concerning the factors contained in I.C. § 32–712(1)(b), and concluded: "The court has made the foregoing distribution of the community assets and obligations considering the factors enumerated in Idaho Code Section 32–712 and concludes that it is fair and equitable division under the circumstances." The magistrate's findings and conclusion reveal that the magistrate 1) understood that the division of the community was within the magistrate's discretion, 2) acted within the outer boundaries of the discretion and consistent with the legal standards provided in I.C. § 32–712(1), and 3) reached the decision by an exercise of reason. Therefore, there was no abuse of discretion in dividing the community.

## II.

■ Under the DA Plan, an individual account balance is maintained for each participant, and there is no guaranteed retirement benefit. Rather, the amount of the retirement benefit is based on the value of the account at the time of retirement which is equal to the sum of the contributions and the investment earnings. Upon retirement Mr. Maslen is entitled to receive the sum of the contributions, plus earnings, in the form of a joint survivor annuity or a lump sum payment.

The magistrate calculated the community interest in the DA Plan benefits by simply subtracting Mr. Maslen's account balance at the time of marriage from his account balance at the time of the divorce. This difference, the magistrate determined, was the portion of the retirement benefits accrued during marriage and therefore, as community property, Mrs. Maslen was entitled to one-half of that amount.

■ Mr. Maslen asserts that the magistrate improperly calculated the community portion of the DA Plan. He contends that the magistrate should have calculated the community's interest in the plan using the

"time rule"[4] rather than freezing the account balance at the time of marriage and subtracting that amount from the account balance that existed at the time of divorce—the difference being the amount acquired during marriage and therefore the community's interest in the pension benefits.

Although the "time rule" method of valuation of the community interest in pension plans has been employed,[5] this Court has never adopted nor held that the "time rule" is the only acceptable method. On the contrary, the trial courts have been given broad discretion in the division of marital property. *Shill v. Shill*, 115 Idaho 115, 765 P.2d 140 (1988); *Koontz v. Koontz*, 101 Idaho 51, 607 P.2d 1325 (1980); *Hooker v. Hooker*, 95 Idaho 518, 511 P.2d 800 (1973); *Ripatti v. Ripatti*, 94 Idaho 581, 494 P.2d 1025 (1972).

In the instant case, the trial court divided the DA Plan based on I.C. § 32–906 which defines all property acquired during marriage, by husband or wife, as being community property. As noted, in divorce proceedings the determination of the value of community property is within the discretion of the trial court and will not be disturbed on appeal if it is supported by substantial competent evidence. *See Shumway v. Shumway*, 106 Idaho 415, 679 P.2d 1133 (1984); *Martsch v. Martsch*, 103 Idaho 142, 645 P.2d 882 (1982).

The record before us reveals that the evidence presented to the magistrate, which related to the value of the pension benefits, was in the form of account statements showing the contributions made during the marriage and the account balance at the time of marriage and at the time of divorce. Any contributions, increases or earnings in the account which occurred prior to the marriage are separate property under I.C. § 32–903, and this portion of the account is reflected in the account balance at the time of marriage. By subtracting the account balance at the time of marriage from the account balance at the time of divorce, the portion of the contributions and the increases in the account which were acquired during the marriage are identified. There is a rebuttable presumption that all property acquired during marriage—in this case, contributions and increases in the account—is community property. I.C. § 32–906; *Shumway v. Shumway*, 106 Idaho 415, 679 P.2d 1133 (1984); *Eliasen v. Fitzgerald*, 105 Idaho 234, 668 P.2d 110 (1983). In the instant case the appellant does not assert that any portion of the increase in the DA plan during the marriage is separate property, and appellant did not introduce any evidence at trial concerning whether the increase in the DA plan account was the result of enhancement in value of the separate property in the account resulting from inflation or other market factors, which increase would be the separate property of the appellant, *see Simplot v. Simplot*, 96 Idaho 239, 526 P.2d 844 (1974), or whether the increase was from "income" from the separate property investment in the DA plan account, which under I.C. § 32–906, would be community property. The magistrate's calculation of the marital portion of the benefits as the increase between the account balance at the time of marriage and that at the time of divorce, is consistent with I.C. § 32–906, in view of the lack of any evidence to rebut the presumption of community property under I.C. § 32–906. Hence, under the facts presented in this case, we do not find an abuse of the magistrate's discretion in determining that portion of the pension plan to be community property.

### III.

#### A.

Mr. Maslen is fully vested in the FB Plan and had been a participant in that plan for

---

**4.** The "time rule" determines community interest in a retirement fund by computing the ratio of the time of marriage ... during which pension benefits were earned, to the total years of service during which the pension was earned. This percentage is then applied against the amount of retirement income to be received ... one half of this amount [is the non-employee spouse's] half of the community asset. Note,

*Distribution of Pension Benefits: Time Runs out on the Time Rule,* 10 Pac.L.J. 847, 850 (1979).

**5.** *Beesley v. Beesley,* 114 Idaho 536, 758 P.2d 695 (1988); *Shill v. Shill,* 100 Idaho 433, 599 P.2d 1004 (1979); *Ramsey v. Ramsey,* 96 Idaho 672, 535 P.2d 53 (1975).

240 months at the time of divorce. The accrued benefit in this plan is expressed in terms of a monthly annuity commencing at normal retirement age which is defined to be age sixty. A participant is eligible to retire any time after attaining age fifty, however, retiring before attaining that age will reduce the amount of a participant's monthly retirement benefits.

The magistrate calculated the community portion of the FB Plan retirement benefits as being the difference between the monthly accrued normal retirement benefit to which Mr. Maslen would have been entitled upon the date of marriage, from that which he would have been entitled upon the date of divorce. The magistrate's calculation process reflected consideration of the applicable early retirement factor as provided under the FB Plan. Mrs. Maslen's portion was similarly determined by the magistrate to be one-half of the difference between the two monthly accrued benefits. In making this determination, the magistrate again stated that he relied on the definition of community property as set forth in I.C. § 32–906.

In *Shill v. Shill*, 115 Idaho 115, 765 P.2d 140 (1988) (*Shill II*), this Court partially reversed its prior decision in *Shill v. Shill*, 100 Idaho 433, 599 P.2d 1004 (1979) (*Shill I*). In *Shill I*, this Court noted that the non-employee spouse's portion of the retirement benefits might have to be paid at the time of the employee spouse's retirement because of lack of liquid assets to distribute at the time of divorce. However, *Shill II* made it clear that retirement benefits should be valued at the time of divorce, because to do otherwise would give the non-employee spouse a portion of the employee spouse's separate property. The Court in *Shill II* then held that the non-employee spouse's award should be based upon the monthly sum which would have been received at the time of divorce.[6]

Because the provisions of retirement plans vary so greatly from plan to plan, both in the manner of funding and also in the administration of the plans, and because the circumstances in each case are so varied, we decline to state a single inflexible rule for calculating the community interest or value of retirement plans. *See Rogers & Rogers*, 45 Or.App. 885, 609 P.2d 877 (1980). "For all of these reasons, it appears to us to be impractical—if not impossible—to formulate a categorical rule about the appropriate treatment of retirement accounts in dissolution of marriage cases. Because there are so many variables, individual cases will have to be largely decided on their facts." 609 P.2d 877 at 881. We conclude that it is a better policy to allow the trial court sufficient discretion to consider the circumstances in each case to determine the most equitable manner for determining and dividing the marital portion of pension benefits. *Shill v. Shill*, 115 Idaho 115, 765 P.2d 140 (1988).

### B.

■ The QDRO[7] entered in this action by the trial court orders that Mrs. Maslen's

---

**6.** The Court stated in *Shill II* that the award should be "based upon the monthly sum which would have been received if the employee spouse had taken retirement at his first eligibility. (Citations omitted.) In the instant case that date is only six months after the decree of divorce, and hence the difference in value is not deemed significant. There may, of course, arise cases in the future in which the lapse of time between divorce and first eligibility for retirement is of substantial length, and in which therefore the problems will be exacerbated. It is sufficient to say that we do not explore those problems today, but leave them to a case-by-case resolution in the future." *Shill II*, 115 Idaho at 120, 765 P.2d at 145. In *Maslen*, the case presently at bar, Mr. Maslen was eligible for early retirement at the time of divorce, and his monthly accrued benefit was easily determined at that time.

**7.** The Retirement Equity Act, 1984 P.L. No. 98–397, 98 Stats. 1426 (1984) enacted procedures for recognizing a spouse's and ex-spouse's right to pension plan benefits pursuant to a qualified domestic relations order (QDRO). 29 U.S.C.A. § 1056(d)(3). A QDRO is a domestic relations order made pursuant to a state domestic relations law, 29 U.S.C.A. § 1056(d)(3)(B)(ii)(II), which "creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant of the plan," 29 U.S.C.A. § 1056(d)(3)(B)(i)(I), and "relates to the provision of ... alimony payments, or marital prop-

share of the FB Plan benefits is to be paid in monthly payments unless she elects to receive her share in some other form.[8] The monthly payments were ordered to begin within sixty days from the date Mr. Maslen attains earliest retirement age, regardless of whether he elects to receive early retirement benefits. Since he was fifty-three years of age at the time of divorce, he had already attained earliest retirement age, which under the plan is age fifty.

Mr. Maslen contends that the magistrate erred when he ordered Mrs. Maslen's interest under the FB Plan to be paid in monthly payments by the plan administrator. He asserts that the magistrate should have determined the present value of her interest in the FB Plan, and then ordered a lump sum award.

Under I.C. § 32–712, the trial court has the power to dispose of the community property in an equitable manner, however, pursuant to I.C. § 32–903, the separate property belonging to each spouse remains separate following the termination of the marriage. With regard to the disposition of community property, the general rule is that the trial court should, if possible, order the disposition of the community property so as to give each spouse sole and immediate control of his or her determined share. *Shill v. Shill*, 115 Idaho 115, 765 P.2d 140 (1988); *Shill v. Shill*, 100 Idaho 433, 599 P.2d 1004 (1979); *Ramsey v. Ramsey*, 96 Idaho 672, 535 P.2d 53 (1975); *Larson v. Larson*, 95 Idaho 376, 509 P.2d 1297 (1973); *Largilliere v. Largilliere*, 50 Idaho 496, 298 P. 362 (1931). However, there are times such as in the case at bar, that the pension rights represent the only significant marital asset owned by the community. Accordingly, in that situation, the trial court cannot order an immediate award of equivalent property to the non-employee spouse in exchange for his or her interest

in the pension benefits simply because there is no equivalent property to award.

The QDRO concept was developed for the purpose of separating a non-employee spouse's interest in a private retirement plan upon divorce. A QDRO identifies each share of the future benefits and separates the benefits, giving each spouse that portion to which he or she is entitled when the benefits become distributable. In effect, a QDRO is a present separation of future retirement benefits. Furthermore, a QDRO generally is an acceptable and appropriate method of dividing a retirement plan and, under certain circumstances, may be preferable over a cash distribution because it does not place an undue financial strain on either party. Such a plan simplifies valuation questions and is an appropriate means of giving each spouse sole and immediate control over his or her share of the retirement benefits.

In this case Mr. Maslen was prepared to make a lump sum payment to Mrs. Maslen. The magistrate should have included a provision in the QDRO that would have given him the option to make a lump sum payment to her within sixty days after judgment was entered representing the present value of her interest in the FB Plan benefits. On remand, the magistrate shall allow Mr. Maslen the option to pay Mrs. Maslen within sixty days, the present value of the remaining payments to which she is entitled from the FB Plan.

### IV.

Mrs. Maslen seeks an award of attorney fees pursuant to I.A.R. 41. The standard for making an award of attorney fees on appeal is whether the appeal was brought, pursued or defended frivolously, unreasonably or without foundation. *East Shoshone Hosp. Dist. v. Nonini*, 109 Idaho 937, 712 P.2d 638 (1985); *Minich v. Gem*

erty rights to a spouse, former spouse...." 29 U.S.C.A. § 1056(d)(3)(B)(ii)(I).

8. 29 U.S.C.A. § 1056(d)(3)(E)(i)(III), allows payments to an alternate payee in any form in which such benefits may be paid under the plan to the participant, other than in the form of a joint and survivor annuity.

Upon retirement, the FB Plan allows retirement benefits to be paid in monthly payments or, if retirement occurs before age sixty, there may be a lump sum distribution of the employee's contribution account.

*State Developers, Inc.,* 99 Idaho 911, 591 P.2d 1078 (1979). Where an appeal presents a genuine issue of law, fact or discretion for review, we will not award attorney fees on appeal. *Spencer v. Idaho First Nat'l Bank,* 106 Idaho 316, 678 P.2d 108 (Ct.App.1984). We decline to award attorney fees in this appeal.

The judgment of the magistrate court is affirmed except that the case is remanded to the magistrate to allow Mr. Maslen the option of making a lump sum payment as provided in Part III. Costs to respondent. No attorney fees awarded.

BAKES, C.J., and CAREY, District Judge Pro Tem., concur.

JOHNSON, Justice, concurring, concurring specially, and concurring in the result.

I concur in the Court's opinion, except part II, in which I concur specially, and part III(A), in which I concur in the result.

As to part II, I write only to clarify that I view the DA Plan as, in essence, a savings account. This Court has never held that the time rule is appropriate for the division of community savings accounts. Therefore, the trial court was correct in not applying the time rule to the DA Plan.

As to part III(A), I write to point out that while I agree we should affirm the magistrate judge's division of the FB Plan, I would do so by distinguishing the cases in which it is appropriate for the trial court to employ the time rule and those such as this one where it is appropriate for the trial court to employ the accrued benefit method.

In *Ramsey* and *Beesley,* the retirement benefits at issue were vested military pensions. In *Shill I* and *II,* the benefits at issue were provided through the Idaho Firemen's Retirement Fund and had not vested during the marriage. The Court approved the use of the time rule in *Ramsey* and *Beesley.* The Court's discussion in *Shill I* is consistent with the approval of the use of the time rule in *Ramsey.* The record in *Shill II* indicates that the trial court on remand following this Court's de-

cision in *Shill I* used the time rule to apportion the retirement benefits. The issue of the propriety of the use of the time rule was not raised on appeal in *Shill II.*

In my view, because of the prominent role that the length of service plays in the determination of vested military retirement benefits and in the determination of the right to benefits under retirement systems such as the Idaho Firemen's Retirement Fund, the time rule remains an appropriate means of apportioning benefits or rights in those cases. We confront a different situation, however, when we address the apportionment of defined or fixed benefits provided under private employer retirement plans. In these plans there are several variables that make the apportionment more complicated.

In this case, the magistrate used the accrued benefit method of apportioning the vested benefits that were earned by Mr. Maslen during his marriage to Mrs. Maslen. This method appropriately took into account not only the length of service, but also average earnings, and the calculation of benefits on early retirement at both the date of marriage and the date of divorce. Use of the time rule for apportioning the type of retirement benefits provided under the FB Plan would not have correctly identified the variables that measure the portion of the benefits earned by Mr. Maslen during the marriage.

McDEVITT, Justice, concurring in the result.

A casual reader of the Court's opinion might conclude that this opinion is precedent for methodology of apportioning retirement benefits upon the dissolution of a marital community. Such is not the case. The Court's opinion is dispositive of those issues raised in the case at issue, to wit *Maslen v. Maslen.*

1. D.A. Plan (Defined Contribution Plan)

The D.A. Plan is aptly described by Justice Johnson in his concurring, concurring specially, and concurring in the result opinion as a "savings account." There is no

apportionment rule or methodology to be applied to such an account. The account is subject to direct proof as to the amounts contributed during the marriage; which said amount, together with the income thereon and any appreciated value in the investments made (or subtracting the declination in value of investments made), is community property which subtracted from the principal balance of the account leave that which is separate property, if separate property is claimed.

In the instant case, the trial court correctly entertained direct evidence of the account balance for stated dates to determine the contributions made during the marriage and from such direct evidence determined the interests of the community.

2. F.B. Plan (Defined Benefit Plan)

The trial court, in valuing the community's interest in the F.B. Plan (defined benefit plan), correctly applied the accrued benefit rule in apportioning the retirement benefits earned during the marriage of the Maslens.

The Court's opinion in this case, in dicta, states that this Court will review for approval or disapproval, any methodology fashioned by the trial court to fairly apportion between the community and separate estate interests in retirement benefits. This statement is not consistent with the holdings of this Court, particularly in *Shill II*, wherein the Court held that it was inappropriate under any circumstances to apportion a separate interest in retirement benefits to the community or although not expressly held, to apportion community benefits to the separate estate. This is the holding of *Shill II* and the Court simply directed that the date of divorce be used as the cutoff date to determine those benefits to avoid apportioning separate retirement benefits to the community estate in that case. The Time Rule, if applied in any instance where there are separate estate interests and community estate interests in a defined benefit plan or plans, results in apportioning either community interests to the separate estate or separate interests to the community estate. This is so due to the fact that the Time Rule treats each day under a retirement benefit plan as equal to every other day. The fact is that this is never the case; salaries increase, benefit plans reward the covered employee for longevity, and defined benefits are enhanced. The application of the *Shill II* rule forbidding the apportionment of separate to community or community to separate in dividing retirement benefit plans is an express abrogation of the Time Rule.

If this Court is to overturn *Shill II* and prior decisions, or revisit them in subsequent cases, it should consider a direct application of the Time Rule unfettered by the cutoff period contemplated by *Shill II* (date of divorce) and apply a rule of total equity. The result would be the adoption of the Time Rule from date of plan inception or employee coverage to date of retirement.